

# COURT OF APPEALS

### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-09-00166-CV

---

CITY OF NORTH RICHLAND HILLS                                               APPELLANT

V.

LAURA FRIEND, INDIVIDUALLY                                             APPELLEES
AND AS PERSONAL
REPRESENTATIVE OF THE
ESTATE OF SARAH ELIZABETH
FRIEND, DECEASED, AND
LUTHER FRIEND, INDIVIDUALLY

----------

## FROM THE 342ND DISTRICT COURT OF TARRANT COUNTY

------------

## OPINION

------------

## I. Introduction

Appellant, the City of North Richland Hills (the City), brings this interlocutory appeal from the trial court's denial of its plea to the jurisdiction in the lawsuit filed against it by Appellees Laura Friend, Individually and as Personal Representative of the Estate of Sarah Elizabeth Friend, Deceased, and Luther

Friend, Individually (collectively, the Friends). The City contends in one issue that the trial court should have granted its plea to the jurisdiction in its entirety, arguing that the Friends' claims are barred by governmental immunity because the City has not, through a statutory waiver of immunity, consented to those claims. We affirm in part and reverse in part.

## II. Background

On July 14, 2004, twelve-year-old Sarah Elizabeth Friend visited the City's NRH20 water park for junior lifeguard training, and after the training finished for the day, she remained at the park to enjoy the water rides. While standing in line for the "Green Extreme" ride, she collapsed due to a hypertrophic cardiomyopathic condition.[1] NRH20 was equipped with at least two automated external defibrillator devices (AEDs). Sarah did not, however, receive external defibrillation until the North Richland Hills Fire Department arrived at the scene approximately twenty minutes later. Sarah was transported and admitted to a nearby hospital, where she was unable to maintain a regular heart rate and subsequently died.

The Friends filed suit against the City, NRH20, and two City employees. They added additional defendants through amended pleadings, including

---

[1]Hypertrophic cardiomyopathy is a disease in which the heart muscle becomes abnormally thick; it can cause abnormal heart rhythms that can, in rare instances, lead to sudden cardiac death. *See* Mayo Clinic, "Hypertrophic cardiomyopathy," http://www.mayoclinic.com/health/hypertrophic-cardiomyopathy/DS00948 (last visited February 23, 2011).

2

seventeen City employees.  The City filed a combined motion to dismiss, special exceptions, and a plea to the jurisdiction, arguing that the Friends' pleadings had not alleged facts showing a waiver of the City's immunity, that the recreational use statute[2] barred the Friends' claims, and that the claims against the City's employees should be dismissed under section 101.106 of the civil practices and remedies code.[3]  The trial court granted the plea to the jurisdiction as to the City's employees but declined to dismiss the claims against the City based on the use of tangible personal property or a condition of real property.  The trial court did, however, order the Friends to more specifically plead the factual basis for their claims "based upon a condition of real property or a premises defect theory of recovery."

The Friends then filed a fourth amended petition, and the City filed another plea to the jurisdiction asserting that it had not consented to suit under the Texas Tort Claims Act (TTCA) and that the Friends were barred by civil practice and remedies code section 101.106 from asserting claims against the City because they had sued both the City and its employees.  Before the hearing on the City's plea, the Friends filed their fifth amended petition.  The petition alleged a negligence claim based on a premises defect and a claim based on the use or condition of tangible personal property (specifically, the AEDs and the radio

---

[2]*See* Tex. Civ. Prac. & Rem. Code Ann. § 75.002 (Vernon Supp. 2010).

[3]*See id.* § 101.106 (Vernon 2005).

equipment used by an employee to call for the necessary resuscitative equipment). The Friends also filed a response to the City's plea to the jurisdiction, arguing that the TTCA waived the City's immunity and that section 101.106 of the TTCA did not bar their claims against the City. The trial court denied the plea to the jurisdiction, and this interlocutory appeal followed.

## III. Standard of Review

Whether the trial court has subject matter jurisdiction is a question of law that we review de novo. *Tex. Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002). A plea to the jurisdiction is a dilatory plea that challenges the trial court's subject matter jurisdiction. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). It is used to defeat a cause of action without regard to whether the claims asserted have merit. *Id.*

The plaintiff has the burden of alleging facts that affirmatively establish the trial court's subject matter jurisdiction. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993). We construe the pleadings liberally in favor of the plaintiff, look to the pleader's intent, and accept the pleadings' factual allegations as true. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004).

## IV. Discussion

In its sole issue, the City contends that the trial court erred by denying its plea to the jurisdiction because the TTCA does not waive the City's immunity from suit. Specifically, the City contends that because the Friends sued both the

4

City and some of its employees, section 101.106(b) of the civil practice and remedies code bars any claim against the City unless the City has consented to the suit. The City continues by arguing that the TTCA has not waived the City's governmental immunity.

## A. Applicable Law

### 1. Governmental Immunity

Unless waived by the State, governmental immunity from suit defeats a trial court's subject matter jurisdiction. *Miranda*, 133 S.W.3d at 225. "[Governmental] immunity deprives a trial court of subject matter jurisdiction for lawsuits in which the state or certain governmental units have been sued[,] unless the state consents to suit." *Id.* at 224. In Texas, governmental immunity has two components: immunity from liability and immunity from suit. *Tooke v. City of Mexia*, 197 S.W.3d 325, 332 (Tex. 2006); *Miranda*, 133 S.W.3d at 224. Immunity from liability "bars enforcement of a judgment against a governmental entity" and is an affirmative defense. *Tooke*, 197 S.W.3d at 332; *Miranda*, 133 S.W.3d at 224. Immunity from suit, on the other hand, "bars suit against the [governmental] entity altogether" because it "deprives a court of subject matter jurisdiction." *Tooke*, 197 S.W.3d at 332; *Miranda*, 133 S.W.3d at 224.

### 2. TTCA Section 101.106(b) Election of Remedies

Civil practice and remedies code section 101.106(b) states: "The filing of a suit against any employee of a governmental unit constitutes an irrevocable election by the plaintiff and immediately and forever bars any suit or recovery by

5

the plaintiff against the governmental unit regarding the same subject matter unless the governmental unit consents." Tex. Civ. Prac. & Rem. Code § 101.106(b). The supreme court has interpreted section 101.106(b) to bar "any suit" against the governmental unit relating to the same subject matter, even if the claimant simultaneously sued both the governmental unit and its employee. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 659–60 (Tex. 2008). However, the supreme court has also held that the issue of whether the governmental entity has consented to the suit—and is therefore precluded from relying on section 101.106(b)—is determined by reference to the Constitution and state laws. *Id.* at 660. Thus, we refer to the TTCA to determine whether the City has consented to suit in this case.

### 3. TTCA Sections 101.021(2) and 101.022 Waivers of Immunity

The City asserts that it has not consented to the Friends' suit because the applicable provisions of the TTCA have not waived the City's governmental immunity. Relevant to this case, section 101.022 provides that the City's immunity is waived for premises defects or "special defects such as excavations or obstructions on highways, roads, or streets." *Id.* § 101.022(a), (b) (Vernon Supp. 2010). In addition, section 101.021(2) of the TTCA waives the City's governmental immunity for "personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the [Friends] according to Texas law." Tex. Civ. Prac. & Rem. Code Ann. § 101.021(2) (Vernon 2005). Conversely, the TTCA

6

does not waive governmental immunity if the governmental unit would not be liable to the claimant under Texas law if it were a private person. *Id.* §§ 101.021(2), .025(a) (Vernon 2008); *Miranda*, 133 S.W.3d at 224. Thus, the TTCA creates a unique statutory scheme in which immunity from liability and immunity from suit are coextensive. *Miranda*, 133 S.W.3d at 224; *see also* Tex. Civ. Prac. & Rem. Code §§ 101.021(2), .025(a). We must therefore determine whether the Friends have established a waiver of the City's governmental immunity by pleading sufficient facts to bring their suit within the TTCA's waiver of immunity in sections 101.021(2) or 101.022. *See* Tex. Civ. Prac. & Rem. Code §§ 101.021(2), .022(a), (b), .025(a); *Miranda*, 133 S.W.3d at 226.

## B. Premises Defect

The Friends contend they have adequately alleged injury caused by a premises defect by pleading that the City "failed to provide an AED device and/or other resuscitative equipment or devices at or near the Green Extreme structure and activity." We disagree.

The TTCA provides a limited waiver of immunity for tort claims arising from either ordinary premises defects or special defects. Tex. Civ. Prac. & Rem. Code Ann. § 101.022(a), (b). Different standards of care apply depending upon whether the condition was an ordinary premises defect (same duty as licensee) or a special defect (same duty as invitee). *Id.*; *see Univ. of Tex. at Austin v. Hayes*, 327 S.W.3d 113, 116 (Tex. 2010). The legislature has not defined "special defect," but the statute refers to conditions such as "excavations or

7

obstructions on highways, roads, or streets." *Id.* (citing Tex. Civ. Prac. & Rem. Code § 101.022(b)); *see also Denton Cnty. v. Beynon*, 283 S.W.3d 329, 331 n.11 (Tex. 2009) (noting conditions can be special defects only if they pose a threat to ordinary users of a particular highway). As a matter of law, the allegations of failure to provide or place the AEDs at or near the Green Extreme activity and structure in the City's water park cannot constitute a "special defect" because no highway, road, or street is involved. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.022(b). Thus, the Friends' allegations do not waive the City's immunity based on the existence of a special defect.

The Friends have also failed to allege an ordinary premises defect. Chapter 101 does not define "premises," but "premises" is defined in civil practice and remedies code section 75.001(2) to include "land, roads, water, watercourse, private ways, and buildings, structures, machinery, and equipment attached to or located on the land, road, water, watercourse, or private way." *Id.* § 75.001(2) (Vernon Supp. 2010); *see Nunez v. Sansom Park,* 197 S.W.3d 837, 842 (Tex. App.—Fort Worth 2006, no pet.) (defining "premises" as "a building or part thereof with its grounds and appurtenances" and holding that negligent use of or a condition in real property does not exist apart from a premises liability claim). Further, "'[d]efect' has been defined as a shortcoming, an imperfection, or the want of something necessary for completeness." *Nunez*, 197 S.W.3d at 842. Here, the Friends' pleading that the City "failed to provide an AED device and/or other resuscitative equipment or devices at or near the Green Extreme structure

8

and activity" does not involve a building or its grounds or appurtenances. Thus, although the pleading arguably alleges a defect based on the "want of something necessary for completeness," the pleading does not allege a premises defect. *See id.* at 842–43; *see also State v. Burris*, 877 S.W.2d 298, 299 (Tex. 1994) (holding stopped vehicle blocking highway not a premises defect); *Retzlaff v. Tex. Dep't of Criminal Justice*, 135 S.W.3d 731, 740–41 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (holding razor wire on prison fence not a premises defect). Therefore, the Friends' pleadings do not allege the existence of an ordinary or special premises defect sufficient to invoke the TTCA's waiver of the City's immunity.[4]

## C. Condition or Use of Tangible Personal Property

### 1. Non-Use of Tangible Personal Property

The Friends allege that the City "failed to provide an AED device and/or other resuscitative equipment at or near the Green Extreme" and that the AED was "removed . . . from the Green Extreme and improperly placed . . . in a location where . . . it could not be timely obtained and used at or near the Green Extreme." However, allegations of failure to use or nonuse of tangible personal property are not sufficient to establish a waiver of immunity. *See Tex. Dep't of Criminal Justice v. Miller*, 51 S.W.3d 583, 587–88 (Tex. 2001) (distinguishing

_____

[4]Because we hold that the Friends' pleadings do not sufficiently allege the existence of a premises defect, we need not address the City's argument that the Friends' premises defect claims are barred by the Recreational Use Statute. *See* Tex. Civ. Prac. & Rem. Code Ann. § 75.002.

9

failure to use or nonuse of property from use or condition). The Friends' allegations concerning the placement or availability of resuscitative equipment so that it could not be timely obtained or used at or near the Green Extreme are nothing more than allegations that the AEDs were not used by the City, that is, they are nonuse allegations that do not waive immunity under the TTCA. *See Kassen v. Hatley*, 887 S.W.2d 4, 14 (Tex. 1994) (holding "non-use of available drugs during emergency medical treatment is not a use of tangible personal property that triggers waiver of sovereign immunity."). And to the extent the Friends allege that the removal of the AEDs from the Green Extreme and placement of that equipment elsewhere was a "use" or "misuse" under the TTCA, changing storage locations cannot logically be characterized as putting or bringing them into action or service or employing or applying them to a given purpose. *See Miller*, 51 S.W.3d at 588 (stating that "'[u]se' means 'to put or bring into action or service; to employ for or apply to a given purpose'") (quoting *Tex. Nat. Res. & Conservation Comm'n v. White*, 46 S.W.3d 864, 869 (Tex. 2001)).

## 2. Use of Tangible Personal Property Did Not Cause Death

The Friends also allege that the City "used or misused the portable radio communication devices in calling for the necessary resuscitative equipment." However, the TTCA only waives the City's governmental immunity for the use of tangible personal property if that use caused the personal injury or death. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.021(2); *Miller*, 51 S.W.3d at 588. In essence, the Friends' allegation concerning the use or misuse of the radio

10

equipment is a recasting of their allegation concerning the nonuse of the AEDs, and any connection between the use or misuse of the radio equipment as alleged in the Friends' pleading is too attenuated from Sarah's collapse and eventual death from a heart condition to be said to have caused them. *See Miller*, 51 S.W.3d at 588; *Dallas Cnty. MHMR v. Bossley*, 968 S.W.2d 339, 342–43 (Tex. 1998). We therefore hold that the Friends have not alleged sufficient facts to establish a waiver of immunity based on the use or misuse of the radio equipment.

### 3. Lack of an Integral Safety Component

The City also contends that the Friends have not alleged sufficient facts to establish a waiver of immunity relating to a use of tangible personal property that lacked an integral safety component. We disagree.

Waiver based upon lack of an integral safety component is limited to very narrow circumstances. *Tex. A&M Univ. v. Bishop,* 156 S.W.3d 580, 585 (Tex. 2005); *Tex. State Technical Coll. v. Beavers*, 218 S.W.3d 258, 261 (Tex. App.—Texarkana 2007, no pet.). A governmental unit does not waive immunity merely when the governmental unit could have provided property that is better, safer, or with a more effective safety feature; the property used must lack an integral safety component that led to the plaintiff's injuries. *See Bishop,* 156 S.W.3d at 581 (holding claim by drama student acting in play that knife furnished by faculty advisors was unsafe without a stab pad was merely claim that stab pad would have made knife safer, not that an integral safety component was lacking

11

for purposes of governmental waiver). The plaintiff must allege that the integral safety component is *entirely* lacking and not merely inadequate. *Id.* at 584; *Beavers*, 218 S.W.3d at 264; *Thurman v. Harris Cnty.*, No. 01-07-00235-CV, 2009 WL 1635430, at *6 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (mem. op.) (reversing dismissal and remanding to allow plaintiffs to clarify by amended pleadings whether ferry completely lacked safety barrier as integral safety component); *see also Robinson v. Cent. Tex. MHMR Ctr.*, 780 S.W.2d 169, 171 (Tex. 1989) (holding failure to furnish life preserver as part of swimming equipment furnished to epileptic patient constituted use of property lacking integral safety component); *Lowe v. Tex. Tech Univ.*, 540 S.W.2d 297, 300 (Tex. 1976) (holding absence of knee brace with uniform constituted use of property lacking integral safety component); *Overton Mem'l Hosp. v. McGuire*, 518 S.W.2d 528, 529 (Tex. 1975) (holding bed rails were integral safety component lacking for hospital bed used for patient); *Univ. of N. Tex. v. Harvey*, 124 S.W.3d 216, 223–24 (Tex. App.—Fort Worth 2003, pet. denied) (holding barrels of ice furnished without necessary scoop to prevent contamination constituted "condition" of tangible personal property lacking integral safety component sufficient to waive immunity).

The Friends allege that the City was negligent in the "misuse or use of tangible personal property that lacked an integral safety component" because "the necessary resuscitative equipment and devices contained an oxygen cylinder, mask, and other airway equipment, but lacked an integral safety

12

component consisting of an AED device." This allegation includes sufficient facts to establish that the equipment that was furnished entirely lacked an integral safety device, and it therefore sufficiently established use or misuse of tangible personal property by the City pursuant to TTCA section 101.021(2). However, this does not end the inquiry as to waiver of the City's immunity because we must also determine whether an exception to the waiver of immunity applies.

## D. Emergency Response

The City argues that its immunity has not been waived by the TTCA because an exception to the waiver applies and the Friends have not pleaded sufficient facts to avoid application of the exception. In that regard, the limited waivers of immunity found in section 101.021 of the TTCA do not apply in cases arising from certain emergency situations absent conscious indifference or reckless disregard for the safety of others. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.055 (Vernon 2005). Section 101.055(2) of the TTCA provides:

This chapter does not apply to a claim arising:

. . . .

(2) from the action of an employee while responding to an emergency call or an emergency situation if the action is in compliance with the laws and ordinances applicable to emergency action, or in the absence of such a law or ordinance, if the action is not taken with conscious indifference or reckless disregard for the safety of others.

*Id.* § 101.055(2). When an exception applies, the TTCA is unavailable as a waiver of immunity even if the facts otherwise fall within a waiver found in section

13

101.021. *See City of San Antonio v. Hartman*, 201 S.W.3d 667, 671–72 (Tex. 2006). The supreme court has interpreted the term "emergency" under this section very broadly. *Id.* at 673 (holding that placing flood barricades on a road six hours after flooding began remained an "emergency situation" as a matter of law). The Friends' pleadings allege claims for Sarah's wrongful death arising from conduct of City employees in responding to an emergency situation.

The Friends have not alleged any ordinance or law that might have governed the City employees' actions in this case. *See id*. at 673 (noting that plaintiffs failed to assert any applicable law or ordinance). They were therefore required to allege sufficient facts of "conscious indifference" or "reckless disregard" for the safety of others under section 101.055(2) in order to establish waiver of immunity in an emergency situation. *Id.* at 672 & n.19; *see* Tex. Civ. Prac. & Rem. Code Ann. § 101.055(2). The City argues that the Friends have failed to make any allegation suggesting that the City employees' actions in this case amounted to "conscious indifference" or "reckless disregard for the safety of others." *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.055(2). These terms mean that the "party knew the relevant facts but did not care about the result," *Hartman*, 201 S.W.3d at 672 & n.19, which equates to the state of mind required for gross negligence as defined by the legislature.[5]

_____

[5]As defined by the legislature, gross negligence is an act or omission involving an extreme degree of risk considering the probability and magnitude of the potential harm to others when viewed objectively from the standpoint of the actor at the time of its occurrence and of which the actor has actual, subjective

14

The Friends generically allege the City's conduct "amounted to gross neglect and/or gross negligence," but their pleadings include much more. The Friends' petition alleges (1) that the City's "NRH20 Water Park was equipped with at least two (2) automated external defibrillaters"; (2) that NRH20 "employed several individuals who were responsible for providing first aid, resuscitative treatment and/or other health care intervention to and for individuals, including Sarah Friend, in need of cardiorespiratory assessment, care and resuscitation and therapy"; and (3) that NRH20 "authorized or permitted" an emergency medical technician, "to be trained in resuscitative treatment." The pleading also alleges that despite the knowledge, training, and presence of the AEDs on the premises, (1) the AEDs "were utilized improperly during the resuscitative efforts and other proper, safe, and effective resuscitative attempts were either performed incorrectly or not at all by various employees" of NRH20, including the emergency medical technician; (2) "Sarah Friend did not receive external defibrillation (which was a necessary and appropriate part of the assessment, care and treatment for her cardiac condition(s)) until after the arrival of the North Richland Hills Fire Department personnel, approximately 21 minutes after her collapse"; (3) "Sarah Friend experienced profound hypoxia and/or anoxia during this time period"; and (4) she was transported to the emergency department of a

_____

awareness of the risk involved but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others. Tex. Civ. Prac. & Rem. Code Ann. § 41.001 (Vernon 2008); *see Stephen F. Austin State Univ. v. Flynn*, 228 S.W.3d 653, 660 (Tex. 2007).

15

hospital where she was defibrillated several times but was unable to maintain a regular heartbeat as a result of the hypoxia and/or anoxia and was pronounced dead a few hours later.

Liberally construing the Friends' allegations as we are required to do, we hold that the Friends' assertions of gross negligence are not mere conclusory allegations. The pleading allegations establish that the City was aware of the necessity of using an AED to resuscitate an individual experiencing a cardiac episode, that the City had AEDs available at NRH20, that the City had trained its employees on the use of the AEDs, but that the City employees did not use an AED to resuscitate Sarah. These factual assertions are sufficient to allege that the City knew the relevant facts but did not care about the result, even in responding to an emergency call. Thus, we hold that the Friends have alleged sufficient facts to establish the nonapplicability of civil practice and remedies code section 101.055(2).[6]

---

[6]It is important to note that the City did not present evidence with its two pleas to the jurisdiction. Our inquiry is therefore limited under the appropriate standard of review to whether the pleadings allege sufficient facts to support the assertion that the City employees acted with "conscious indifference" or "reckless disregard" for the safety of others. *See Miranda*, 133 S.W.3d at 226; *see also City of Dallas v. Porter*, No. 05-02-00364-CV, 2002 WL 1773008, at *4 (Tex. App.—Dallas Aug. 2, 2002, no pet.) (mem. op.) (holding that for plea to the jurisdiction that did not present evidence of jurisdictional facts, pleadings alleged sufficient facts of reckless conduct and stating that "[a]lthough the City's entitlement to immunity pursuant to section 101.055 might be established after the case is further developed, [the plaintiff] is not required to prove her case in order to defeat the plea to the jurisdiction"). We express no opinion as to whether the Friends may ultimately carry their burden of proof as to the conscious indifference or reckless disregard of the City's employees once the

### E. Exemplary Damages

The City also argues that the trial court erred by denying its plea to the jurisdiction to the extent that the Friends seek exemplary damages. Because the Friends do not allege that the City's conduct in this case involved a proprietary function, we agree. The TTCA specifically prohibits the recovery of exemplary damages for governmental functions. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.024 (Vernon 2008) ("This chapter does not authorize exemplary damages."); *see also Durbin v. City of Winnsboro*, 135 S.W.3d 317, 325 (Tex. App.—Texarkana 2004, pet. denied) (recognizing that the TTCA does not authorize exemplary damages for a governmental unit's governmental functions and that exemplary damages are available in suits involving proprietary functions of a governmental unit).

### V. Conclusion

Because the Friends' fifth amended petition, construed liberally in the Friends' favor, alleges a waiver of governmental immunity for injuries arising from use or misuse of tangible personal property based on the lack of an integral safety component and gross negligence by employees acting in response to an emergency situation, we affirm the trial court's denial of the City's plea to the jurisdiction as to that claim. As to all other allegations of liability and entitlement to exemplary damages in the Friends' fifth amended petition, we reverse the trial

case is further developed. The matter is not before us given the procedural posture of this appeal.

17

court's denial of the City's plea to the jurisdiction and dismiss those allegations for lack of subject matter jurisdiction.

ANNE GARDNER
JUSTICE

PANEL:  LIVINGSTON, C.J.; DAUPHINOT and GARDNER, JJ.

DAUPHINOT, J. filed a dissenting opinion.

DELIVERED:  February 24, 2011

18



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 2-09-166-CV

CITY OF NORTH RICHLAND HILLS                            APPELLANT

V.

LAURA FRIEND, INDIVIDUALLY                            APPELLEES
AND AS PERSONAL
REPRESENTATIVE OF THE
ESTATE OF SARAH ELIZABETH
FRIEND, DECEASED, AND
LUTHER FRIEND, INDIVIDUALLY

------------

## FROM THE 342ND DISTRICT COURT OF TARRANT COUNTY

------------

## DISSENTING OPINION

------------

I agree with the majority's analysis of whether the Friends sufficiently alleged a waiver of immunity, but I dissent because I do not believe that such analysis is necessary. We cannot determine from the pleadings whether the operation of the water park is a governmental or proprietary function. If the water

park is a proprietary function, NRH does not have immunity, and no analysis of whether immunity has been waived is necessary.  Accordingly, I respectfully dissent.

LEE ANN DAUPHINOT
JUSTICE

PANEL:  LIVINGSTON, C.J.; DAUPHINOT and GARDNER, JJ.

DELIVERED:  February 24, 2011

2