**TEXAS STATE TECHNICAL COLLEGE, Appellant,**

v.

**Adam BEAVERS, Appellee.**

**No. 06–06–00077–CV.**

Court of Appeals of Texas, Texarkana.

Submitted Jan. 24, 2007.

Decided March 2, 2007.

Rehearing Overruled April 10, 2007.

Kamilla L. Stokes, Asst. Atty. Gen., Austin, for appellant.

Casey Q. Carlile, The Carlile Law Firm, LLP, Marshall, for appellee.

Before MORRISS, C.J., CARTER and MOSELEY, JJ.

## OPINION

Opinion by Justice CARTER.

Adam Beavers, a Marshall High School student, enrolled in a college level technical course, diesel engine testing and repair, at Texas State Technical College (TSTC). After a few weeks' training on diesel engines, Beavers and a fellow student attempted to flip the diesel engine over to work on the other side by using a hydraulic hoist furnished by TSTC. In the process, Beavers' hand was caught between the hoist leg and the engine, resulting in serious injuries. Beavers sued TSTC, alleging TSTC's immunity was waived because the injuries were caused by a condition or use of tangible personal property and further alleged TSTC employees acted without legal or statutory authority. TSTC filed a plea to the jurisdiction and a motion to dismiss and sever alleging it was immune from the suit. The trial court denied TSTC's motions. TSTC brings this interlocutory appeal as authorized by Section 51.014(a)(8) of the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(8) (Vernon Supp.2006). We affirm the judgment of the trial court.

Sovereign immunity deprives a trial court of subject-matter jurisdiction for lawsuits in which the State or certain governmental units have been sued unless the State consents to the suit. *Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 224 (Tex.2004). It is undisputed that TSTC is such a governmental unit. Unless waived by the Texas Tort Claims Act, TSTC is entitled to sovereign immunity.

**Standard of Review**

In reviewing a trial court's ruling on a plea to the jurisdiction, we construe the pleadings in favor of the nonmovant and look to the nonmovant's intent. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 446 (Tex.1993). We are not required to look solely to the pleadings when deciding a plea to the jurisdiction; we may consider evidence relevant to jurisdiction when it is necessary to resolve the jurisdictional issue raised. *Bland Indep. Sch. Dist. v. Blue,* 34 S.W.3d 547, 555 (Tex.2000). Whether a trial court has subject-matter jurisdiction is a question of law subject to de novo review. *Tex. Natural*

*Res. Conservation Comm'n v. IT–Davy*, 74 S.W.3d 849, 855 (Tex.2002); *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex.1998). Whether a pleader has alleged facts which affirmatively demonstrate a trial court's subject-matter jurisdiction is a question of law reviewed de novo. Likewise, whether undisputed evidence of jurisdictional facts establishes a trial court's jurisdiction is also a question of law. *Miranda*, 133 S.W.3d at 225–26. Therefore, we will review de novo the trial court's order. Here, the material facts of this incident are not disputed.

**Issue on Appeal**

TSTC brings forward one point of error alleging the trial court erred in denying the plea to the jurisdiction and the motion to dismiss and sever because Beavers failed to plead and prove his injuries were caused by a use of tangible personal property by a State employee as required under the Tort Claims Act. Beavers responds to this allegation and asserts that he presented and proved that his injuries were caused by (1) a condition of tangible personal property, (2) a use of tangible personal property, and (3) TSTC's acts engaged without legal and/or statutory authority.

The Texas Tort Claims Act expressly waives sovereign immunity for "personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." TEX. CIV. PRAC. & REM.CODE ANN. § 101.021(2) (Vernon 2005).

**Factual Background**

Beavers and the other students had been shown by their instructor, Dave Barbieri, the procedure necessary to turn a diesel engine over using mechanical hoists. On November 19, 2003, Beavers and another student, Greg Atwood, began the process of lifting the diesel engine. This involved inserting two bolts into the top part of the engine, connecting a chain (approximately three feet in length) to each bolt, and then connecting the hoist hook to the chain. Atwood then operated the lever lifting the engine, and Beavers inserted some wooden blocks under the engine. The side of the engine resting on the hoist leg slipped, and Beavers' hand was caught between the hoist leg and the engine. There is no dispute that all the equipment involved was supplied by TSTC for the purpose of training students.

**Condition or Use of Tangible Personal Property**

TSTC argues that the Texas Tort Claims Act does not waive sovereign immunity unless the plaintiff pleads and proves two requirements:

(1) The injuries must be caused by a "use of tangible personal ... property"; and

(2) A paid employee of the governmental unit must be the "user" of the property. The "use" of tangible personal property has been interpreted to mean "put or bring into action or service" or "employ for or apply to a given purpose." *Tex. A & M Univ. v. Bishop*, 156 S.W.3d 580, 583 (Tex. 2005). TSTC alleges the person using that property must be shown to be an employee of the governmental unit. From that premise, TSTC argues that only Beavers and Atwood were using the hydraulic hoist, and since neither of them are employees, Beavers has not supplied the requisite proof.

The courts of Texas have struggled to define the limits of "use" and "condition" which serve to waive immunity under the Texas Tort Claims Act. Some decisions interpreting the statute authorized a more expansive concept of what actions entailed the "use" of tangible personal property by

a governmental entity. For example, in *City of Waco v. Hester*, 805 S.W.2d 807 (Tex.App.-Waco 1990, pet. denied), the use of a day room in which a young man was being held, and in which the police had also placed a man with known violent homosexual tendencies, was held to be adequate proof of a use of tangible personal property. Other cases refused to follow *Hester*. *See Tarrant County Hosp. Dist. v. Henry*, 52 S.W.3d 434, 442 (Tex.App.-Fort Worth 2001, no pet.) (declining to follow *Hester* ); *Scott v. Prairie View A & M Univ.*, 7 S.W.3d 717, 720 (Tex.App.-Houston [1st Dist.] 1999, pet. denied) (stating day room and door were not defective and were too attenuated from actual injury to be considered proximate cause of inmate's injury); *Laman v. Big Spring State Hosp.*, 970 S.W.2d 670, 672 (Tex.App.-Eastland 1998, pet. denied) (refusing to follow *Hester* to extent it holds that a room is personalty or that a cause of action will lie for negligent use of real property and noting that *Hester* is better supported by court's reasoning that television set was tangible personal property).

In *Vela v. City of McAllen*, 894 S.W.2d 836 (Tex.App.-Corpus Christi 1995, no pet.), it was held that the use of a booking room by the city police was sufficient to waive immunity. "Use" of the room may include arranging furniture to facilitate the booking process. It is foreseeable that an individual in the booking room may be injured if the booking room is not properly nor safely arranged. This would be true particularly if the individual had some known medical condition or impairment, such as epilepsy. "Conceivably, negligent or improper 'use' of a room may very well cause personal injury." *Id.* at 840. Other courts disagreed for various reasons. *See Laman*, 970 S.W.2d at 672 ("To the extent that *Vela* and *Hester* can be understood to state that a room is personalty or that a cause of action will lie for the negligent use

of real property, we respectfully decline to follow our sister courts. The duty of a real property owner with regard to others is defined as a premises defect.").

Supplying a prisoner/lineman with a tool belt that is "insufficient or inappropriate" because it was not "free floating" and slipped, causing injuries to the workman, was sufficient to waive immunity under the statute. *Tex. Dep't of Corrections v. Jackson*, 661 S.W.2d 154 (Tex.App.-Houston [1st Dist.] 1983, writ ref'd n.r.e.).

More recently, the Houston First Court of Appeals held that a razor wire fence constructed by the Department of Criminal Justice in the recreational area for prisoners waived immunity.

> The razor wire was tangible property in that it was corporeal, concrete, and had a palpable existence. Moreover, TDCJ put the razor wire into service for a given purpose by placing the wire along the perimeter fence to deter inmates from escaping. This use of the razor wire did more than merely furnish the condition that made appellant's injury possible; it was a direct factor in appellant's injuries. We believe that injuries proximately caused by a negligent placing of razor wire in locations where a person might accidentally come into contact with it are also proximately caused by a use of tangible property under circumstances where a private person would be liable. Therefore, we hold that the TTCA waives sovereign immunity for appellant's negligence claims.

*Retzlaff v. Tex. Dep't of Crim. Justice*, 135 S.W.3d 731, 741 (Tex.App.-Houston [1st Dist.] 2003, no pet.).

TSTC cites two cases in arguing that Beavers did not plead and prove that his injuries were caused by a use of tangible property by a State employee. *San Anto-*

*nio State Hosp. v. Cowan*, 128 S.W.3d 244 (Tex.2004); *Bishop*, 156 S.W.3d at 583.

In *Cowan*, a patient was committed to a state hospital due to psychotic behavior, depression, and suicidal tendencies. 128 S.W.3d at 245. The hospital allowed the patient to maintain possession of his suspenders and walker. The patient used the suspenders and a pipe from the walker to commit suicide. The Texas Supreme Court concluded it must be shown that the governmental body was the user of the tangible property. The court framed the question as: "The issue here is whether merely providing someone with personal property that is not itself inherently unsafe is a 'use' within the meaning of the Act." *Id.* The court held that such is not a use by the governmental entity. Thus, the hospital's immunity could only be waived by its use of Cowan's walker and suspenders, not by Cowan's use of them. ("Respondents assert only that the Hospital gave Cowan his walker and suspenders; they do not allege that the Hospital put the suspenders and walker into service or employed them for a given purpose. By providing Cowan his walker and suspenders, the Hospital did not 'use' them within the meaning of section 101.021(2)." *Id.* at 246.) Here, it is undisputed that the hydraulic hoist used to suspend the engine that fell on Beavers' hand was employed and placed into service by TSTC for the purpose of instructing students in the class. Although the instructor's hands were not physically on the hoist when the injury occurred, one must take into account the entirety of the circumstances under which the incident arose. The purpose of the school and the objective of the incident giving rise to the injury was to teach the student. The student, after having been given instruction by the teacher, proceeded to do as he had been directed, and thus "learn by doing." The use of the equipment as made available by the school

for this task was essential to the entire purpose of the exercise which was taking place; all of it was conducted under the teacher and student relationship with the teacher instructing the student on the proper use of the personal property being employed. It is disparate from a circumstance of a patient who hangs himself with his own suspenders.

In *Bishop*, a drama club, directed by independent contractors, performed a play in which one of the actors stabbed the other with a knife because he missed the "stab pad." The directors had decided a real knife should be used. 156 S.W.3d at 582. Two faculty advisors provided the club logistical support and served as the club's liaison to the university. *Id.* The Texas Supreme Court held the faculty advisors, as employees of Texas A & M, did not "put or bring [the knife] into action or service" or "employ [the knife] for or apply [it] to a given purpose." *Id.* at 583. Further, the directors of the production were independent contractors as a matter of law, for whom the university was not responsible. *Id.* at 585.

In *Bishop*, the university did not select or employ a real knife to be used in the production. That was done by a person for whom the university was not responsible. *Id.* at 583. The Texas Supreme Court further held that, even if the faculty advisors allowed the independent contractor directors to provide the knife, such failure to properly supervise does not constitute a "use" of personal property that would waive immunity. *Id.* Otherwise, the failure to prevent any accident that involves personal property would come within the statute's purview. *Id.*

 The facts here differ from *Cowan* and *Bishop* in several respects. Here, TSTC selected and employed the tangible personal property that was used in hoist-

ing an engine that physically contacted Beavers' hand and caused personal injury. However, no TSTC employee operated the hoisting equipment; the hoist was operated by Beavers and Atwood. The negligence alleged by Beavers is that TSTC "negligently equipped" the hydraulic hoist with only a three-foot length of chain and two wooden blocks to perform the exercise and that the students followed the instructions in using the hoist. In *Cowan*, the governmental unit took possession of the suspenders and walker, but allowed the patient to possess and presumably use them. In *Bishop*, failing to properly supervise the director's choice to use a knife in the dramatic production did not constitute a "use" of the personal property that would waive the university's immunity. *Id.* at 583. Merely supplying nondefective property to be used by others and nothing more is not the sort of "use" contemplated by the statute to waive immunity. However, if the governmental unit supplies or provides equipment that lacks an integral safety component, it has engaged in a "use" that would serve to waive immunity. *See id.* at 584.[1]

At one time, the Texas Supreme Court held that failing to provide proper protective equipment waived immunity under the statute. *Lowe*, 540 S.W.2d at 300 (univer-sity allegedly failed to provide knee brace for player with knee injury). Other cases holding similarly are *Overton Memorial Hospital v. McGuire*, 518 S.W.2d 528 (Tex. 1975) (negligently providing hospital bed without bed rails is a use or condition of tangible personal property and waives immunity); *Robinson*, 780 S.W.2d 169 (failure to provide life preserver to mentally-handicapped child waived immunity). In referring to *Lowe* and *Robinson* cited above, the Texas Supreme Court stated, "These cases represent perhaps the outer bounds of what we have defined as use of tangible personal property." *Clark*, 923 S.W.2d at 585. Moreover, "the precedential value of these cases is therefore limited to claims in which a plaintiff alleges that a state actor has provided property that lacks an integral safety component and that the lack of this integral component led to the plaintiff's injuries." *Id.*

■ The integral safety component must be entirely lacking, rather than merely inadequate. *Bishop*, 156 S.W.3d at 584, *citing Clark*, 923 S.W.2d at 585. Stated conversely, supplying safety components that are inadequate, but not entirely lacking, does not constitute a use of personal property so as to waive immunity.

Here, Beavers alleges the

---

1. Some cases have analyzed the lack of an integral safety component with reference to the "condition" of the tangible personal property. *See Univ. of N. Tex. v. Harvey*, 124 S.W.3d 216, 223 (Tex.App.-Fort Worth 2003, pet. denied) (barrels of ice without ice scoop found to be a "condition" of tangible personal property-ice scoop was integral safety component). The requirement regarding an integral safety component was recognized by the Texas Supreme Court in *Kerrville State Hosp. v. Clark*, 923 S.W.2d 582, 585 (Tex.1996). In that case, the Texas Supreme Court made a distinction between use and nonuse of tangible personal property. It held that *Lowe v. Tex. Tech Univ.*, 540 S.W.2d 297 (Tex.1976) (involving failure to furnish knee brace to football player), and *Robinson v. Cent. Tex. MHMR Ctr.*, 780 S.W.2d 169 (Tex.1989) (failing to provide epileptic with life preserver while swimming), represented "perhaps the outer bounds of what we have defined as *use* of tangible personal property." *Clark*, 923 S.W.2d at 585. Whether the requirement is analyzed under the "condition" or "use" section of the statute, the Texas Supreme Court has made it clear that, unless the governmental agency has "used" tangible personal property in some other manner so as to waive immunity, merely supplying the property for another's use, without more, does not waive immunity unless the supplied property is completely lacking an integral safety component.

condition of the movable hydraulic hoist caused the diesel engine to slip and fall crushing Adam's hand. The hoist's boom length was set at the incorrect position. And, the three-foot chain attached to the end of the boom was not the proper rigging equipment for lifting a 650 pound diesel engine. The hoist with these two conditions, caused Adam Beavers' injuries for which TSTC would be liable were it a private person according to Texas law.

Beavers further alleges he was following instructions provided by the class instructor. Beavers has provided evidence from an expert, George J. Greene, that (1) the three-foot length of chain provided by TSTC to attach the engine to the hoist was improper and a chain sling or spreader should have been used to balance the suspended engine, and (2) the hoist boom length position was improperly set, leading to the unstable balance of the engine on the hoist. Another expert, P. Kim Luker, opined that the "root cause" of the injury was that the engine shifted due to TSTC's failure to perform a Process Safety Analysis on the use of the crane to roll the engine, including proper rigging, support equipment, safety practices, and the failure to ensure that instructors were qualified to instruct students in the safe use of hoisting equipment. Shad Miller, the expert designated by the hoist manufacturer, testified the hoist was not equipped with a four-point rigging assembly, only a two-point assembly. The four-point assembly would have been safe because it would allow the engine to be lifted evenly instead of on two corners diagonally.

This testimony presents evidence from the plaintiff that TSTC was negligent in providing equipment which was improperly equipped to turn over the engine or in failing to provide the students with equipment which would have allowed a safe manner in which to roll or flip over the engine. However, we do not find any evidence that an integral safety component was completely lacking or omitted.

So, in this case, we have an instance of a pleading supported by evidence that a governmental unit was negligent in providing equipment to students in its class because the configuration of the equipment was one of the proximate causes of the student's injury. We have found that this testimony does not support a finding that an integral safety component was completely lacking. Further, no employee of the governmental unit was operating the equipment at the time of the injury. Does the governmental unit "use" the tangible personal property when it negligently places equipment (improper configuration for lifting and turning 650–pound engine) into service, instructs the student in its use, and directs the student to use the property? We do not believe the *Bishop* and *Cowan* cases mandate a negative answer to this question.

In *Cowan*, the governmental unit did nothing to the personal property (suspenders and walker of the patient). It merely allowed the patient access to his own property. In no way could it be said that the governmental unit used the personal property except to allow the patient access to the property. The court stated, "A governmental unit does not 'use' personal property merely by allowing someone else to use it *and nothing more.*" [2] *Cowan*, 128 S.W.3d at 246 (emphasis added). In explaining this rationale, the court illustrated that, if more than merely allowing access to property is shown, a different result may ensue. The Texas Supreme Court

---

**2.** In *Nunez v. City of Sansom Park,* 197 S.W.3d 837 (Tex.App.-Fort Worth 2006, no pet.), the Fort Worth court likewise found that merely making personal property available (bunk bed, shoe strings) and nothing more, is not a use by the governmental unit.

explained that, in *Overton* (where the state hospital supplied the plaintiff with a bed without bed rails), "The hospital did not merely allow the patient access to the bed; it actually put the patient in the bed as part of his treatment." *Id.* Here, TSTC did not merely allow access to the engine hoist assembly; it configured the assembly and placed it into service, instructed Beavers in its use, and directed that he use it. The property was then used by Beavers as instructed and anticipated by TSTC. Considerably more use of the property by TSTC is shown than merely allowing someone else access to personal property. There is no dispute that the engine and hoist were owned or controlled by TSTC. The allegation is not simply that TSTC failed to supply equipment (nonuse of personal property), but also that the equipment it made available was supplied in a negligent fashion which negligence was one proximate cause of the injury (use of personal property).

Neither do we believe *Bishop* controls this case. In *Bishop,* the university did not supply the knife in question. The faculty advisors were not involved in the selection of the knife, which was done by the independent contractors for whom the university was not responsible. The court also found that no liability could attach to the university for the faculty advisors' alleged negligent supervision of the production in allowing the use of a knife. Here, there is no evidence an independent contractor provided the property involved. Implicit in the discussion in *Bishop* is the proposition that, if the university employees had selected the knife to be used in the production and therefore "put or [brought] [the knife] into action or service," such conduct would have constituted a use of tangible personal property that proximately caused the injuries, thereby waiving the immunity under the statute even though no employee of the university physically inflicted the knife wound. Such actions would have shown more than merely allowing access to the knife or negligent supervision of the production. Further, the court in *Bishop* explained in detail that the directors, who supplied the knife and stab pad, were not employees, but independent contractors, for whose actions the university was not responsible. Once again, the implicit holding is that, had the directors been employees who supplied the knife and stab pad, the actions of the directors would have constituted a "use" that would waive the university's immunity even though no employee action inflicted the knife wound.

■ TSTC's sole issue on appeal is that Beavers "failed to plead and prove that his injuries were caused by a use of tangible personal property by a State employee as required under the Tort Claims Act." TSTC's argument essentially is that Beavers must allege that a state employee was physically operating the personal property at the time of Beavers' injury. Since the injury occurred when Beavers and a classmate were operating the equipment, it is argued there is no showing that an employee of TSTC used the property. An inanimate legal entity can only act by its employees. *In re Mktg. Investors Corp.,* 80 S.W.3d 44, 50 (Tex.App.-Dallas 1998, no pet.). Here, TSTC selected and placed into operation the engine hoist to be used by the students. Beavers alleged and presented some proof that TSTC negligently equipped the hydraulic hoist which was to be used for classroom instruction and that use of such equipment was a proximate cause of Beavers' injuries. We believe that this use by TSTC complies with the mandate set out in *Cowan* that a waiver of immunity by Section 101.021(2) occurs only when "the governmental unit is itself the user." *See Cowan,* 128 S.W.3d at 246.

We believe that, when a governmental unit does more than merely allow another access to personal property, but also negligently equips the property, intentionally puts it into service for use by another with full knowledge of its intended use, and instructs the manner of its use, and when the personal property so supplied is in fact used in the manner and for the purpose the governmental unit intended and such use of the tangible personal property is a proximate cause of injury, the governmental unit has used tangible personal property in such a manner as to waive immunity under the Tort Claims Act.

Having found that the trial court's judgment should be affirmed on the above ground, it is unnecessary to consider Beavers' alternative theory for sustaining the judgment. We affirm the judgment of the trial court.