**Opinion issued June 28, 2018**



In The

# Court of Appeals

### For The

# First District of Texas

———————————

### NO. 01-17-00956-CV

———————————

## TEXAS DEPARTMENT OF CRIMINAL JUSTICE, Appellant

## V.

## CESAR RANGEL, Appellee

---

### On Appeal from the 80th District Court
### Harris County, Texas
### Trial Court Case No. 2015-64114

---

### MEMORANDUM OPINION

In this appeal, we consider whether the Texas Tort Claims Act[1] [TTCA]

permits an inmate to sue the Texas Department of Criminal Justice ["TDCJ"] for

injuries he sustained when a prison guard used a tear gas gun to disperse two

---

[1]     *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.001–.109 (Vernon 2011 & Supp. 2016).

groups of inmates who were threatening to fight and refusing to return to their cells for the night. Specifically, we consider whether (1) furnishing the gun and gas shells to the prison guard was a negligent "use" of tangible personal property under the TTCA, (2) application of the TTCA is precluded because the prison guard's act was alleged to be an intentional tort, or (3) the emergency and riot exceptions to the TTCA's limited waiver of immunity apply. We affirm the trial court's denial of TDCJ's plea to the jurisdiction.

## BACKGROUND

On May 19, 2015, at 10:30 p.m., several inmates at Lychner State Jail refused to return to their bunks, or "rack up," for the night. TDCJ requested a supervisor, and Lieutenant Cody Waller, a TDCJ prison guard, responded and ordered the inmates to "rack up," which they did at that time.

Approximately 30 minutes later, Waller was again called to the dormitory because the inmates were refusing to return to their bunks for a count. When Waller arrived again, two groups of 13 inmates each were engaged in a verbal altercation and were threatening to fight. Waller and a sergeant ordered the inmates to return to their bunks, but the inmates refused to do so. Waller then requested that the sergeant retrieve a 37-mm gas gun and a video camera as a show of force. While waiting for the camera, the inmates began making aggressive

2

gestures to one another, such as striking their closed fists against the palms of their hands.

The sergeant retrieved a video camera, 37-mm gas gun, and two rounds of gas from the armory. The two rounds of ammunition were different. One was longer, had the word "smokeless" written on it, and the rest of the writing on it was faded. The second round was shorter in length.

Once the guards had the gun and camera, the inmates became less aggressive, but continued threatening one another verbally. One inmate said, "You might as well bust the gas because as soon as you leave, we gonna fight. Otherwise you will have to stand here between us all night. We ain't gonna rack up otherwise."

Waller handed the gas gun and ammunition to the sergeant and went to speak to the duty warden to obtain authorization to use the gas gun. Waller and the duty warden discussed the issue for 15 to 20 minutes. The duty warden told Waller to give the inmates two verbal orders to comply and authorized the use of the gas gun if the offenders still refused to rack up.

As Waller was walking back to the dormitory, he loaded the longer of the two shells in the gun. He used the longer "skat shell" in the gun rather than the shorter "muzzle blast shell."

3

Back in the dormitory, Waller gave four separate orders for the inmates to return to their assigned bunks or he would disperse the chemical agents. One group of inmates refused to comply with each order. Waller then fired the gas canister into the group of inmates who were refusing to comply with orders. The "skat round" that was in the 37-mm gas gun hit Rangel, causing burns and a fractured hand.

TDCJ later determined that Waller had inadvertently used the "skat round," which was designated for outdoor use only. TDCJ found that "[a]lthough the inappropriate round was used, chemical agents were necessary to prevent a major disturbance and imminent bodily harm to staff and offenders."

Rangel filed suit against both Waller and TDCJ. Rangel's Second Amended Petition alleges that TDCJ is liable for (1) dispensing the outdoor-only skat shell for use in handling an indoor situation, (2) labeling the skat shell improperly because the writing on it was smeared and faded, and (3) authorizing Waller to use the gun without questioning Waller's choice of chemical-agent munition. Rangel also filed "excessive force" claims against Waller, the sergeant, and the duty warden under 42 U.S.C. § 1983.

TDCJ filed a plea to the jurisdiction, alleging that, because Rangel's claims arose from an alleged use of excessive force, an intentional tort, his pleadings did not state a claim against TDCJ for which sovereign immunity has been waived

4

under the TTCA. Rangel responded to the plea to the jurisdiction, alleging that TDCJ's negligent use of personal property caused his damages, that the intentional-tort exception to the limited waiver of sovereign immunity did not apply because TDCJ's negligence in furnishing the skat shell combined with Waller's excessive use of force to cause his injuries, and that the emergency and riot exceptions to the limited waiver of sovereign immunity presented a fact question for a jury.

The trial court denied TDCJ's plea to the jurisdiction and this interlocutory appeal followed.[2]

## DENIAL OF TDCJ'S PLEA TO THE JURISDICTION

In several related issues on appeal, TDCJ contends that the TTCA does not waive sovereign immunity in this case because there was no "use" of tangible personal property. Specifically, TDCJ contends that providing the ammunition and gun to the prison guard and authorizing the use of the gun over the telephone was not a "use" of tangible personal property. TDCJ also contends that, even if there was a "use" of tangible personal property, there was no waiver of sovereign immunity because the prison guard who fired the skat round was either (1)

---

[2]     TDCJ also filed a no-evidence motion for summary judgment and a traditional motion for summary judgment. However, the trial court marked through references to those pleadings in its order denying the plea to the jurisdiction, thereby indicating that it was not ruling on those motions. As such, the summary judgment motions remain pending in the trial court and are not part of this interlocutory appeal.

5

responding to an "emergency situation, civil disobedience, or riot" or (2) committing an intentional tort. We address each contention respectively.

## *Standard of Review*

A plea to the jurisdiction based on governmental immunity challenges a trial court's subject-matter jurisdiction. *State v. Holland*, 221 S.W.3d 639, 642 (Tex. 2007); *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225–26 (Tex. 2004). An appeal may be taken from an interlocutory order granting or denying a plea to the jurisdiction filed by a governmental unit. TEX. CIV. PRAC. & REM. CODE § 51.014(a)(8) (West Supp. 2017). We review de novo the trial court's ruling on a plea to the jurisdiction. *City of Houston v. Rhule*, 417 S.W.3d 440, 442 (Tex. 2013) (per curiam).

The plaintiff must allege facts that affirmatively establish the trial court's subject-matter jurisdiction. *Holland*, 221 S.W.3d at 642. In determining whether the plaintiff has satisfied this burden, we construe the pleadings liberally in the plaintiff's favor and deny the plea if facts affirmatively demonstrating jurisdiction have been alleged. *Id.* at 643; *Miranda*, 133 S.W.3d at 227; *Smith v. Galveston Cnty.*, 326 S.W.3d 695, 697–98 (Tex. App.—Houston [1st Dist.] 2010, no pet.).

When a defendant challenges the existence of jurisdictional facts in a plea to the jurisdiction, the trial court must consider relevant evidence submitted by the parties. *City of Waco v. Kirwan*, 298 S.W.3d 618, 622 (Tex. 2009); *Miranda*, 133

6

S.W.3d at 227. Because the standard of review on appeal "generally mirrors that of a summary judgment," in reviewing the evidence presented, we take as true all evidence favorable to the nonmovant and indulge reasonable inferences and resolve doubts in her favor. *Miranda*, 133 S.W.3d at 228. When the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law. *Id.* at 228. If, however, the evidence creates a fact question regarding jurisdiction, then the trial court must deny the plea, and the fact issue will be resolved by the factfinder. *Id*. at 227–28.

### *Use of Tangible Personal Property*

Section 101.021(2) of the Texas Civil Practice and Remedies Code provides that a governmental unit is liable for personal injury or death caused by the use of tangible personal property "if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(2) (West 2011).

To fall within the waiver of section 101.021(2), the plaintiff's injury "must be proximately caused by the condition or use of tangible property." *Dall. Cty. Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d 339, 343 (Tex. 1998). "The requirement of causation is more than mere involvement," and "[p]roperty does not cause injury if it does no more than furnish the condition that makes the

injury possible." *Id.*; *see Tex. Dep't of Criminal Justice v. Miller*, 51 S.W.3d 583, 588 (Tex. 2001). The Texas Supreme Court requires a causal nexus between the use of the property and the plaintiff's injury. *Dall. Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 543 (Tex. 2003*); see Bossley*, 968 S.W.2d at 342–43 (incidental involvement of property is insufficient to establish waiver, and property does not "cause" the injury if it simply furnishes the condition that makes the injury possible); *Univ. of Tex. Med. Branch Hosp. v. Hardy*, 2 S.W.3d 607, 609 (Tex. App.—Houston [14th Dist.] 1999, pet. denied) (there must be "direct and immediate relationship" between injury and "use" of property).

TCDJ contends that "[m]erely furnishing the gun, a muzzle blast round, and the skat shell was not a negligent 'use' under the TTCA." In support, TDCJ relies on *Dallas County Mental Health & Mental Retardation v. Bossley*. In *Bossley*, a mentally ill patient escaped through unlocked hospital doors and later committed suicide by leaping in front of a truck. 968 S.W.2d 339, 340–41 (Tex. 1998). The Texas Supreme Court concluded that neither the use of tangible property, i.e., unlocking the hospital doors, nor their condition, i.e., being unlocked, caused the patient's death. *Id.* at 343. While the doors may have "furnish[ed] the condition that ma[de] the injury possible" by permitting the patient to escape into the community where he committed suicide, "the use and condition of the doors were too attenuated from [the patient's] death to be said to have caused it." *Id.*

8

However, unlike *Bossley*, the use of the gun and skat shell was not "too attenuated . . . to be said to have caused it." Indeed, state actors gave the prison guard the gun and skat shell for the express purpose of using it to control the situation with the inmates. The prison guard sought and obtained not only the gun and shells, but also permission to use them. As such, this case is more like several others in which the state did more than "furnish the condition that made the injury possible," but, instead, actually dispensed the personal property, which was then used for its intended purpose.

In *University of Texas M.D. Anderson Cancer Center v. Jones*, 485 S.W.3d 145, 151 (Tex. App.—Houston [14th Dist.] 2016, pet. denied), the plaintiff, a long-time smoker, participated in a smoking-cessation study by The University of Texas M.D. Anderson Cancer Center ["UTMDA"]. *Id.* at 147. UTMDA prescribed a medication and dispensed it to the plaintiff through its pharmacy. *Id.* After she attempted suicide, the plaintiff sued UTMDA, alleging that it had negligently prescribed and dispensed the medication that caused her depression. *Id.* at 148. The court of appeals held that the dispensing of the drug by UTMDA's pharmacy was a use of tangible personal property for purposes of the section 101.021(2) waiver of sovereign immunity. *Id.* at 150. The court of appeals noted that the supreme court has defined "use" as "to put or bring into action or service; to employ for or apply to a given purpose." *Id.* at 151 (quoting *Tex. Dep't of Crim.*

*Justice v. Miller*, 51 S.W.3d 583, 588 (Tex. 2001)). The court concluded that "[b]y giving [the plaintiff] the drug and directing her to take it for the purposes of quitting smoking and conducting its study, UTMDA put the drug into service and employed it for a given purpose as those concepts are commonly understood." *Id.* at 151.

In *City of Houston v. Davis*, 294 S.W.3d 609 (Tex. App.—Houston [1st Dist.] 2009, no pet.), the plaintiff sued the City of Houston after she was bitten by a police dog. *Id.* at 611. The City filed a plea to the jurisdiction claiming that there was no waiver of sovereign immunity because the City's police officer was not "using" the dog. *Id.* at 612. This Court noted that, when determining whether personal property has been "used," we consider "the purpose for the property, whether the use of the property was a direct factor in the injury, and whether the property did more than merely furnish the condition that made the injury possible." *Id.* (citing *Retzlaff v. Tex. Dep't of Crim. Justice*, 135 S.W.3d 731, 741 (Tex. App.—Houston [1st Dist.] 2003, no pet.)). We also "take into account the entirety of the circumstances under which the incident arose." *Id.* The Court noted that the dog's purpose was to assist the officer's performance of police duties, which the officer was carrying out at the time of the injury, and that the dog directly caused the injury. *Id.* at 612–13. As such, the dog did more than merely furnish the condition that made the injury possible. *Id.* at 613.

In *Texas State Technical College v. Beavers*, 218 S.W.3d 258 (Tex. App.—Texarkana 2007, no pet.), a student filed a lawsuit against a state technical college after he injured his hand using a hydraulic hoist provided by the college. *Id.* at 260. The college filed a plea to the jurisdiction, alleging that it did not "use" the hoist, rather, the student did. *Id.* at 261. The court of appeals noted that a governmental unit does not "use" personal property "merely by allowing someone else to use it *and nothing more*." *Id.* at 265. However, the court concluded that the college "did not merely allow access to the engine hoist assembly; it configured the assembly and placed it into service, instructed Beavers in its use, and directed that he use it." *Id.* at 266. The court concluded as follows:

> [W]hen a governmental unit does more than merely allow another access to personal property, but also negligently equips the property, intentionally puts it into service for use by another with full knowledge of its intended use, and instructs the manner of its use, and when the personal property so supplied is in fact used in the manner and for the purpose the governmental unit intended and such use of the tangible personal property is a proximate cause of injury, the governmental unit has used tangible person property in such a manner as to waive immunity under the Tort Claims Act.

*Id.* at 267.

This case is more like *Beavers*, *Davis*, and *Jones* than *Bossley*. In *Bossley*, the open door did not cause the plaintiff's suicide, it just furnished a means for the plaintiff's escape, after which he committed suicide. In *Beavers*, *Davis*, and *Jones*, the property furnished by a governmental unit directly caused the plaintiff's injury

11

when it was used as the governmental unit anticipated that it would be used. Here, the governmental entity, i.e., the prison armory, dispensed the skat shell and the gun in response to a specific incident—the situation between the rival groups of inmates—and the prison guard used the gun and skat shell as intended—to end the stand-off between the groups of inmates and force them to return to their cells. As such, we hold that the trial court correctly concluded that TDCJ "used" the gun and skat shell for purposes of the waiver of sovereign immunity. *See also Retzlaff*, 135 S.W.3d at 741 (holding TDCJ "used" razor wire by placing it along perimeter fence and the wire was a direct factor in plaintiff's injuries). In so holding, we reject TDCJ's argument that cases in which the governmental unit "furnished" the instrument that caused the injury are "specific to the use of medication." Nothing in the text of *Jones* indicates that its reasoning is limited to the dispensing of drugs. The holding is based on the fact that the governmental entity provided the property and that, while being used for the specific purpose for which it was dispensed, the property caused injury.

Similarly, we reject as hyperbole TDCJ's claim that "holding TDCJ liable here would be tantamount to holding any law enforcement agency liable for issuing a gun or handcuffs to a police officer as a 'use' when a police officer later uses the gun or handcuffs to harm someone in the intentional tort of battery." It is safe to say that handcuffs and guns are not dispensed for the purpose of having

12

someone commit the intentional tort of battery. The "use" alleged in this case is the dispensing of the incorrect type of gas shell to handle the inmate disturbance, not the alleged intentional tort by Waller.

Because TDCJ furnished tangible personal property that, when used for the specific purpose intended, caused Rangel's injury, the trial court did not err in denying TDCJ's plea to the jurisdiction. Because we have held that Rangel's pleadings allege a "use" of tangible personal property that waives sovereign immunity, we need not decide whether Rangel allso alleged a defective condition of personal property or a failure by TDCJ to follow policy.

We overrule issues three, four, and five.

### *Intentional Tort*

TDCJ contends that, even if Rangel pleaded and proved that his claims fall within the TTCA's limited waiver of immunity from claims involving a use of tangible personal property, it is immune because the TTCA's exception for intentional torts applies. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.057(2) (West 2011) ("This chapter does not apply to a claim ... arising out of assault, battery, . . . or any other intentional tort. . . ." ). Specifically, TDCJ contends that the gravamen of Rangel's complaint is that the prison guard used excessive force in dealing with the situation presented and that Rangel is attempting to "artfully plead around the TTCA by alleging negligence."

13

In support, TDCJ relies on City of *Watauga v. Gordon*, 434 S.W.3d 586 (Tex. 2014). In *Gordon*, the Supreme Court of Texas held that a claim involving a police officer's use of excessive force—specifically, the use of overly tight handcuffs—to effectuate a lawful arrest constituted a claim arising out of civil battery rather than out of negligence. *Id.* at 593. Citing section 101.057(2), the *Gordon* court concluded, "The Texas Tort Claims Act waives governmental immunity for certain negligent conduct, but it does not waive immunity for claims arising out of intentional torts, such as battery." *Id.* at 594. TDCJ argues that, as in *Gordon*, its immunity had not been waived because Rangel's claim that he was injured by Waller's use of excessive force arose from allegations of battery, an intentional tort for which immunity is not waived.

We agree with TDCJ that the TTCA does not waive immunity for claims arising out of intentional torts. We also agree that a plaintiff may not maintain a negligence claim under the TTCA when the claim is based on "the same conduct" as the intentional tort claim. *See Tex. Dep't of Pub. Safety v. Petta*, 44 S.W.3d 575, 580 (Tex. 2001). Here, however, the claim against TDCJ is based on conduct that differs from his excessive-force claim against Waller. Rangel's claim against Waller is based on an allegation that firing the gun toward the group of inmates constituted a use of excessive force, i.e. an intentional tort. In contrast, Rangel's

14

claim against TDCJ is based on negligence in providing Waller a skat shell, which was to be used outdoors only, to respond to an indoor disturbance.

Because Rangel has alleged ***different*** facts giving rise to his negligence claim, it is not based on the same conduct as his excessive-force claim and is not precluded by *Gordon*. *See City of Houston v. Nicolai*, 539 S.W.3d 378, 392–93 (Tex. App.—Houston [1st Dist.] 2017, pet. filed) (holding that intentional-tort exception does not apply when negligence claim "is distinct from any intentional tort" and "government employee whose conduct is the subject of the [negligence claim against the government] is not the intentional tortfeasor"); *cf. Saenz v. City of El Paso*, 637 Fed. Appx. 828, 831 (5th Cir. 2016) ("In this case, [plaintiff] alleges no distinct facts aside from those that formed the basis of the excessive force claim. Because [plaintiff's] negligence claim relies on the same conduct as the excessive force allegations it falls outside the TTCA's 'limited waiver of sovereign immunity.'").

"[I]ntentional conduct intervening between a negligent act and the result does not always vitiate liability for the negligence." *Delaney v. Univ. of Hous.*, 835 S.W.2d 56, 60 (Tex. 1992). In *Delaney*, the Texas Supreme Court held that the plaintiff's claims against the university for failure to repair her dormitory door were distinct from a rape that she suffered. *Id.* In so holding, the court noted that "[t]o read section 101.057(2) so broadly as to except from the waiver of immunity

15

any claim, irrespective of its nature, for injuries resulting from an intentional tort, is to ignore a distinction which the law recognizes when negligent and intentional acts both contribute to the occasion of injury." *Id.*

Here, the allegation is that the government actor, an armory employee at the prison, negligently furnished an outdoor-use-only skat shell for indoor use to the alleged tortfeasor, who then used excessive force. Both the negligent and intentional acts combined to cause Rangel's injury.[3] Because the alleged negligent act pleaded is distinct from the intentional tort pleaded, the trial court did not err in denying TDCJ's plea to the jurisdiction based on the intentional-tort exception to the limited waiver of sovereign immunity.

We overrule issue two.

### *Emergency & Riot Exceptions*

TDCJ contends that, even if Rangel pleaded and proved that his claims fall within the TTCA's limited waiver of immunity from claims involving a use of tangible personal property, it is immune because the TTCA's exceptions for a governmental response to emergencies and riots apply. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.055(2) (West 2011) ("This chapter does not apply to a

---

[3] TDCJ, citing *Townsend v. Mem'l Med. Ctr.*, 529 S.W.2d 264 (Tex. Civ. App.—Corpus Christi 1975, writ ref'd n.r.e.), claims that the TTCA can never apply when the intentional tortfeasor is a governmental employee. *Townsend*, however, does not allege an independent negligent action by a different state actor from the intentional tortfeasor, as does the case here.

16

claim arising . . . from the action of an employee while responding to an emergency call or reacting to an emergency situation if the action is in compliance with the laws and ordinances applicable to emergency action . . . ." ); TEX. CIV. PRAC. & REM. CODE ANN. § 101.057(2) (West 2011) ("This chapter does not apply to a claim . . .based on an injury or death connected with any act or omission arising out of civil disobedience, riot, insurrection, or rebellion[.]").

As both parties note, there are no cases applying these exceptions to the TTCA in the context of a disturbance in a prison. TDCJ takes the very broad position that the emergency/riot exceptions should apply in prisons because "TDCJ officials likely deal with riot situations more frequently than police officers due to the violent nature of incarcerated individuals" and that "prison officials should be given significant deference in running prisons." We do not disagree that prison officials have great discretion in how to properly respond to disturbances with inmates, but we do not necessarily agree that immunity should always follow regardless of the negligence shown. Under TDCJ's reasoning, any threatened disturbance at a prison is an emergency, or even a riot if it involves an assemblage of seven or more inmates,[4] thereby precluding its liability for negligence.

---

[4] TDCJ recognizes that the TTCA does not define "riot," but encourages this Court to adopt the definition from the Texas Penal Code, which provides:

For the purpose of this section, "riot" means the assemblage of seven or more persons resulting in conduct which: (1) creates an

17

In response, Rangel argues that whether there was an emergency or riot is a question for the factfinder in this case. The Texas Supreme Court has set forth the proper procedure for reviewing jurisdictional facts in a plea to the jurisdiction, explaining as follows:

> [I]f a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised, as the trial court is required to do. When the consideration of a trial court's subject matter jurisdiction requires the examination of evidence, the trial court exercises its discretion in deciding whether the jurisdictional determination should be made at a preliminary hearing or await a fuller development of the case, mindful that this determination must be made as soon as practicable. Then, in a case in which the jurisdictional challenge implicates the merits of the plaintiffs' cause of action and the plea to the jurisdiction includes evidence, the trial court reviews the relevant evidence to determine if a fact issue exists. The United States Supreme Court and all of the federal circuits have authorized federal district courts to consider evidence in deciding motions to dismiss for lack of subject matter jurisdiction. ***If the evidence creates a fact question regarding the jurisdictional issue,***

---

immediate danger of damage to property or injury to persons; (2) substantially obstructs law enforcement or other governmental functions or services; or (3) by force, threat of force, or physical action deprives any person of a legal right or disturbs any person in the enjoyment of a legal right.

TEX. PENAL CODE § 42.02 (West 2016). We decline to import this definition from the Penal Code into the TTCA. The legislature could have incorporated the Penal Code's definition of "riot" by reference, or it could have added those words of the definition to the TTCA, but it did not, and we will not graft that definition into the TTCA. *See, e.g.*, *Invesco. Inv. Servs., Inc. v. Fid. Deposit & Dis. Bank*, 355 S.W.3d 257, 261 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (declining to use term defined in one section of finance code in another unrelated section). Instead, we will give the term its plain and ordinary meaning. *See Watson v. State*, 369 S.W.3d 865, 870 (Tex. Crim. App. 2012).

18

*then the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the fact finder.* However, if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law.

We acknowledge that this standard generally mirrors that of a summary judgment under Texas Rule of Civil Procedure 166a(c). We adhere to the fundamental precept that a court must not proceed on the merits of a case until legitimate challenges to its jurisdiction have been decided. This standard accomplishes this goal and more. It also protects the interests of the state and the injured claimants in cases like this one, in which the determination of the subject matter jurisdiction of the court implicates the merits of the parties' cause of action. The standard allows the state in a timely manner to extricate itself from litigation if it is truly immune. However, *by reserving for the fact finder the resolution of disputed jurisdictional facts that implicate the merits of the claim or defense, we preserve the parties' right to present the merits of their case at trial.* Similar to the purpose of a plea to the jurisdiction, which is to defeat a cause of action for which the state has not waived sovereign immunity (usually before the state has incurred the full costs of litigation), the purpose of summary judgments in Texas is "'to eliminate patently unmeritorious claims and untenable defenses.'" *By requiring the state to meet the summary judgment standard of proof in cases like this one, we protect the plaintiffs from having to "put on their case simply to establish jurisdiction." Instead, after the state asserts and supports with evidence that the trial court lacks subject matter jurisdiction, we simply require the plaintiffs, when the facts underlying the merits and subject matter jurisdiction are intertwined, to show that there is a disputed material fact regarding the jurisdictional issue*.

*Miranda*, 133 S.W.3d at 227–28 (internal citations omitted) (emphasis added).

We agree with Rangel that there is a disputed, material fact regarding the jurisdictional issue of whether an emergency or riot existed at the time of Rangel's injury. TDCJ's self-serving conclusion that an emergency or riot existed is not

19

conclusive. *Cf.*, *City of Hous. v. Davis*, No. 01-13-00600-CV, 2014 WL 1678907, at *5 (Tex. App—Houston [1st Dist.] Apr. 24, 2014, pet. denied) (memo op.) (stating that defendant's failure to use term "emergency" to describe situation did not preclude existence of emergency). Instead, we look at all of the evidence presented in support of the plea to the jurisdiction to determine whether the existence of an emergency/riot was undisputed or whether Rangel raised a fact-issue regarding TDCJ's asserted emergency/riot defense.

TDCJ points out that two groups of inmates refused to return to their bunks for the night and were engaged in a verbal altercation. They were using vulgar language and threatening to fight. TDCJ considered this disturbance to be a riot or emergency. When the inmates refused to return to their bunks, TDCJ officials brought in a gas gun, gas ammunition, and camera as a show of force. The inmates began gesturing to one another by striking their closed fists in the palms of their hands. One offender said, "You might as well bust the gas because as soon as you leave, we gonna fight. Otherwise you will have to stand here between us all night. We ain't gonna rack up otherwise."

Waller then went to the duty warden to get permission to use the gas gun. He discussed the situation with the duty warden for 15 to 20 minutes before obtaining such authorization. After repeated orders to return to their bunks along with

20

threats of chemical discharge, Waller discharged the weapon when the inmates refused to comply. All offenders finally lay down on the ground.

Rangel points out that Waller and the duty warden spent 15 to 20 minutes to discuss the situation and that none of the inmates committed an act of violence either toward the prison employees or one another. Both factors, Rangel contends, support a conclusion that there was no emergency or riot. Rangel also argues that a factfinder watching the videotape of the altercation could reasonably conclude that no emergency or riot was taking place.

We agree that the evidence presented does not prove the existence of an emergency or a riot as a matter of law. Indeed, what might be considered an emergency/riot if it took place in a public park might be considerably more routine in a prison setting. Based on the evidence before the trial court, a factfinder could determine that, even if the guard's act in discharging the gas gun was completely appropriate, there was still no emergency or riot because TDCJ had control over the situation.

Because there is a disputed jurisdictional fact issue—the existence of an emergency or riot—the trial court did not err in denying TDCJ's plea to the jurisdiction.

We overrule issue one.

**CONCLUSION**

Because Rangel's pleadings allege a "use" of tangible personal property, the intentional-tort exception to the TTCA does not bar Rangel's negligence claim, and there is a jurisdictional fact question regarding application of the emergency and riot exceptions to the TTCA, the trial court did not err in denying TDCJ's plea to the jurisdiction. Accordingly, we affirm the trial court's interlocutory order.


Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Jennings and Lloyd.