The UNIVERSITY OF TEXAS M.D. ANDERSON CANCER CENTER, Appellant

v.

Karen JONES, Appellee

NO. 14–15–00266–CV

Court of Appeals of Texas, Houston (14th Dist.).

Opinion filed January 21, 2016

Matthew Jason Warner, Richardson, TX, for Appellant.

Jeffrey Benton, Dallas, TX, for Appellee.

Panel consists of Justices Boyce, Busby, and Brown.

## OPINION

J. Brett Busby, Justice

Appellee Karen Jones alleges that she suffered injuries as a result of taking medication prescribed and dispensed to her through a smoking cessation study conducted by appellant, The University of Texas M.D. Anderson Cancer Center (UTMDA). UTMDA brings this interlocutory appeal challenging the trial court's denial of its plea to the jurisdiction. UTMDA contends that Jones's allegations and jurisdictional evidence do not establish a negligent use of tangible personal property as required to waive its governmental immunity under section 101.021 of the Texas Tort Claims Act (TTCA). Tex. Civ. Prac. & Rem.Code § 101.021 (West 2011). Concluding that Jones's allegations and evidence are sufficient to support a waiver of immunity, we affirm.

### BACKGROUND

Jones, a long-time smoker, alleged the following facts in her live petition. She voluntarily signed up for UTMDA's "Two to Quit" study after hearing about it on the radio. The study investigated the effectiveness of using two medications, Varenicline (Chantix) and Bupropion (Zyban), to help people quit smoking. UTMDA used a blind study protocol in which participants were randomly divided into three groups: 1) those taking only placebos, 2) those taking both Chantix and Zyban, and 3) those taking only Chantix. When the study began, neither the participants nor the UTMDA study employees knew the medication group to which Jones had been assigned. Both Chantix and Zyban carried a warning from the Food and Drug Administration about possible side effects, such as agitation, depression, and suicidal ideation.

Jones had previously attempted to quit smoking without success. Several years ago, Jones took Chantix in an effort to quit smoking, but she experienced adverse reactions to the drug, such as strange dreams and difficulty sleeping. Her husband was also a smoker and died of lung cancer in 2010. Following his death, she became depressed and was prescribed Zyban. Jones notified the study's candidate screener of her depression and her adverse reaction to Chantix when she applied for the study.

During the course of the study, Jones took Chantix and a Zyban placebo. Dr. Maher Karam–Hage, a psychiatrist employed by UTMDA, wrote the prescription, UTMDA's pharmacy dispensed the drugs to Jones, and UTMDA instructed her to take the drugs as part of the study. Jones used the medication as directed.

After participating in the study for several weeks, Jones attempted suicide by consuming a large quantity of liquid morphine that had been prescribed to her husband before his death. Jones spent several weeks in the intensive care unit. She suffered tissue destruction due to lack of movement while comatose and underwent renal dialysis for several months. She suffered permanent nerve and renal damage.

Jones filed this suit, alleging her damages were caused by UTMDA negligently screening her, admitting her into the study, and prescribing and dispensing Chantix when it knew or should have known that she should not be given the drug due to her history of depression. UTMDA filed a plea to the jurisdiction, and the parties submitted evidence relevant to the issues raised in the plea. The trial court signed an order denying the plea, and this interlocutory appeal followed. *See* Tex. Civ. Prac. & Rem.Code Ann. § 51.014(a)(8) (West Supp.2015).

## ANALYSIS

### I. Standard of review and applicable law

Jones acknowledges in her petition that UTMDA is a governmental institution. Governmental institutions, as defined by section 101.001(3)(D) of the Texas Civil Practice and Remedies Code, are entitled to immunity from suit for personal injuries unless immunity has been waived. *Univ. of Texas M.D. Anderson Cancer Ctr. v. King*, 329 S.W.3d 876, 879 (Tex.App.–Houston [14th Dist.] 2010, pet. denied). The plaintiff bears the burden to plead facts demonstrating a waiver of immunity. *Texas Tech Univ. Health Sciences Ctr. v. Ward*, 280 S.W.3d 345 (Tex.App.–Amarillo 2008, pet. denied). If sovereign immunity is not waived, the trial court lacks subject matter jurisdiction to hear the case. *Rusk State Hosp. v. Black*, 392 S.W.3d 88, 95 (Tex.2012).

A challenge to a trial court's subject matter jurisdiction may be asserted by a plea to the jurisdiction. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex.2004). Whether a trial court has subject matter jurisdiction is a question of law. *Id.* We therefore review the trial court's ruling on a plea to the jurisdiction de novo. *Id.* at 228. We construe the pleadings liberally in favor of the plaintiff

and consider pertinent jurisdictional evidence offered by the parties. *Tex. Dep't of Crim. Justice v. Miller*, 51 S.W.3d 583, 587 (Tex.2001); *Wise Reg'l Health Sys. v. Brittain*, 268 S.W.3d 799, 804 (Tex.App.–Fort Worth 2008, no pet.). When, as here, evidence has been submitted that implicates the merits of the suit, we take as true all evidence favorable to the non-movant. *Wise Reg'l Health Sys.*, 268 S.W.3d at 805. We indulge every reasonable inference and resolve all doubts in favor of the non-movant. *Id.* If the evidence raises a fact issue as to jurisdiction, the governmental institution's plea must be denied because the issue must be resolved by the trier of fact. *City of Houston v. Ranjel*, 407 S.W.3d 880, 887 (Tex.App.–Houston [14th Dist.] 2013, no pet.). If the relevant evidence is undisputed or fails to present a jurisdictional fact issue, however, the court should rule on the plea as a matter of law. *Id.*

Section 101.021 of the TTCA provides a limited waiver of governmental immunity in three circumstances. Tex. Civ. Prac. & Rem.Code Ann. § 101.021 (West 2011). A court must look to the terms of the TTCA to determine the scope of the waiver and consider the particular facts of the case to determine whether it comes within that scope. *Miller*, 51 S.W.3d at 586–87. Relevant to this appeal is subsection (2), which waives immunity when a plaintiff's personal injury was "caused by a condition or use of tangible personal property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." Tex. Civ. Prac. & Rem.Code Ann. § 101.021(2) (West 2011).

### II. The trial court did not err in denying UTMDA's plea to the jurisdiction.

In its sole issue on appeal, UTMDA argues that no waiver of governmental im-

munity exists·in this case because the true nature of Jones's allegations is that UTMDA personnel negligently exercised medical judgment and misused information in approving Jones's participation in the study, not that they negligently prescribed and dispensed tangible medication to her.[1] UTMDA relies on *Kamel v. University of Texas Health Science Center at Houston*, in which the First Court of Appeals focused on the "true nature" of the dispute to determine whether the plaintiff's reference to tangible personal property was merely an artful attempt to plead around the TTCA's requirements. 333 S.W.3d 676, 686 (Tex.App.–Houston [1st Dist.] 2010, pet. denied).[2]

We agree with UTMDA that allegations involving misuse of information, negligent training, or medical judgment, without more, are insufficient to waive sovereign immunity. *Univ. of Tex. Med. Branch at Galveston v. York*, 871 S.W.2d 175, 179 (Tex.1994) (concluding that medical information, even if recorded on paper, is not tangible personal property); *Kamel*, 333 S.W.3d at 686 (holding that claims for errors in medical judgment or general

medical negligence do not involve the use of tangible property). We disagree, however, that the negligence of which Jones complains involved nothing more than improper screening and negligent medical judgment. Her petition must be viewed in its entirety to determine whether waiver under the TTCA exists. *Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 639 (Tex. 1999).

Although Jones includes allegations of negligent medical judgment and misuse of information in her pleadings, she also alleges that the consequence of those errors was the negligent prescribing and dispensing of a drug that caused her injuries. *See, e.g., Wise Reg'l Health Sys.*, 268 S.W.3d at 805–06 (holding that waiver applied given allegations and evidence that nurses were negligent not only in failing to question doctor's order to give medication but also in administering medication). In Jones's view, the alleged events that led up to UTMDA misusing the drug by prescribing and dispensing it to her demonstrate that the latter actions were negligent.[3] Considering Jones's allegations and evidence as·a whole, we address the two

---

1. · Specifically, UTMDA argues the "gravamen of [Jones's] negligence claims" are the allegations in her pleadings that UTMDA: 1) failed to use or misused information collected during the screening process, 2) misdiagnosed her depression in letting her into the study, 3) negligently trained or supervised its employees in conducting the ·screening process, 4) made errors in medical judgment in allowing her to participate in the medication study, and 5) failed to take other actions during the screening for the study.

2. *Kamel* is distinguishable from this case because *Kamel* did not involve a hospital prescribing and dispensing medication to the plaintiff, nor did the plaintiff claim the doctor used the instruments in a negligent manner. 333 S.W.3d at 686. The surgical tools in *Kamel* merely furnished the condition of the harm. In this case, however, Jones alleges Chantix was the proximate cause of her harm.

3. For example, Jones alleges that UTMDA "misused [Chantix] by prescribing and dispensing it to [Jones]," which caused her damages. She also alleges that UTMDA breached the standard of care by, among other things, its failure to screen subjects properly before prescribing and dispensing drugs, the failure of the prescribing physician to consider the particulars of Jones's condition, and the failure of the pharmacy to warn of dangers before dispensing drugs. She then alleges that each breach of the standard of care was a substantial contributing factor in prescribing and dispensing Chantix to her, and that UTMDA's physician was negligent in prescribing the drug to her. These allegations are developed further in the expert reports accompanying her petition.

subsidiary issues raised in UTMDA's brief: whether UTMDA's prescribing and dispensing of medication is use of tangible personal property, and whether those actions are sufficiently related to Jones's injuries to satisfy the causation element of the section 101.021(2) waiver.

### A. Jones alleged UTMDA used tangible personal property by prescribing and dispensing a drug to Jones.

This Court has previously held that the dispensing of a drug by UTMDA's pharmacy was a use of tangible personal property for purposes of the section 101.021(2) waiver. *Adams v. Rios*, No. 14–95–00239–CV, 1996 WL 337108, at *3–4 (Tex.App.–Houston [14th Dist.] June 20, 1996, no pet.) (mem. op., not designated for publication) (citing *Quinn v. Memorial Medical Ctr.*, 764 S.W.2d 915, 917 (Tex.App.–Corpus Christi 1989, no writ))[4] In *Adams*, the plaintiffs alleged Grace Adams shot and killed her husband due to the adverse side effects of the drug Halcion. *Id.* at *1. They also alleged UTMDA's personnel should have known of the hazards associated with the negligent manner in which the drug was approved and released to her. *Id.* at *4. UTMDA challenged the court's jurisdiction, claiming the plaintiffs had alleged only failure to exercise medical judgment. *Id.* This Court disagreed based on plaintiff's allegation that the center was "negligent in the use of medication" and the fact that UTMDA's Outpatient Pharmacy dispensed Halcion to Adams. *Id.*

In this case, UTMDA does not dispute the allegations that its employee prescribed Chantix to Jones, that UTMDA's pharmacy dispensed the drug to her, or that UTMDA instructed her to take the drug as part of the study. Instead, UTMDA seeks to distinguish *Adams* and *Quinn* on the ground that in this case, Jones administered the drug to herself as directed by the prescription and instructions.[5] According to UTMDA, dispensing the Chantix, in and of itself, is not a use of tangible property; a government employee must also administer the medication for there to be a waiver. To the contrary, as many courts have recognized, either dispensing or administering a drug is a use of tangible personal property for purposes of section 101.021(2). *Wise Reg'l Health Sys.*, 268 S.W.3d at 807; *Adams*, 1996 WL 337108, at *3–4; *Quinn*, 764 S.W.2d at 917; *see also Texas Tech Univ. Health Science Ctr. v. Buford*, 334 S.W.3d 334, 338 (Tex. App.–Eastland 2010, no pet.) ("The common thread running through those cases [finding a waiver] is that, in each one, the governmental unit being sued was the entity that employed those who used, by administering or dispensing, the drugs that were alleged to have caused the damages."); *Terry A. Leonard, P.A. v. Glenn*, 293 S.W.3d 669, 684 (Tex.App.–San Antonio 2009), *rev'd on other grounds*, 332 S.W.3d 403 (Tex.2011) (distinguishing *Quinn* on ground that defendants did not dispense medication); *Somervell County Healthcare Auth. v. Sanders*, 169 S.W.3d 724, 728 (Tex.App.–Waco 2005, no pet.) (same).[6]

---

4. Although *Adams* lacks precedential value, *see* Tex.R.App. P. 47.7(b), we agree with its decision of this issue and apply it here.

5. UTMDA also points to Jones's receipt of Chantix through a blinded study rather than through a typical physician-patient relationship. But UTMDA concedes that the drug was dispensed to Jones, and UTMDA has not demonstrated that this feature of the study has

any bearing on the question whether dispensing the drug to her was a use of tangible personal property.

6. UTMDA relies on our sister court's opinion in *Ruggeri v. Baylor College of Medicine*, No. 01–13–00353–CV, 2014 WL 4345165 (Tex. App.–Houston [1st Dist.] 2014, no pet.). That case is not inconsistent with our holding, however, because the medication prescribed

This conclusion gains support from the supreme court's definition of "use" as "to put or bring into action or service; to employ for or apply to a given purpose." *Miller*, 51 S.W.3d at 588.[7] By giving Jones the drug and directing her to take it for the purposes of quitting smoking and conducting its study, UTMDA put the drug into service and employed it for a given purpose as those concepts are commonly understood. Therefore, consistent with the above cases, we hold that UTMDA's actions in prescribing and dispensing Chantix to Jones are a sufficient "use of tangible personal property" to satisfy that requirement of the section 101.021(2) waiver.

**B. Jones alleged and provided evidence that UTMDA's use proximately caused her injury.**

■ For immunity to be waived under section 101.021(2), the injury must also be "so caused" by the use of tangible personal property that the governmental unit would, "were it a private person, be liable to the claimant according to Texas law." Tex. Civ. Prac. & Rem.Code Ann. § 101.021(2) (West 2011). The requirement of causation is more than mere involvement. *Dallas Cty. Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d 339, 343 (Tex.1998). If only involvement were required, the waiver of immunity would be virtually unlimited, as few injuries do not somehow involve tangible personal or real property. *Id.* Instead, a nexus between the use of tangible property and the plaintiff's injuries is required. *Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542–43 (Tex.2003); *Univ. of Tex. Med. Branch at Galveston v. Kai Hui Qi*, 402 S.W.3d 374, 388 (Tex.App.–Hous-ton [14th Dist.] 2013, no pet.). In other words, the plaintiff must allege that the use proximately caused the personal injury. *Bossley*, 968 S.W.2d at 342.

■ Here, Jones alleged and offered expert evidence that her suicide attempt was "proximately caused by the use of tangible personal property," namely the [Chantix] that was prescribed and dispensed" by UTMDA. UTMDA responds that the general proximate cause standard does not apply, as the use of tangible personal property must be the "direct" cause of plaintiff's injuries for section 101.021(2) to apply. To the extent UTMDA contends that this requirement is akin to a sole causation standard, the relevant case law does not support its position. *Wise Reg'l Health Sys.*, 268 S.W.3d at 808; *Univ. of N. Tex. v. Harvey*, 124 S.W.3d 216, 223 (Tex.App.–Fort Worth 2003, pet. denied) (citing *Michael v. Travis County Hous. Auth.*, 995 S.W.2d 909, 912–15 (Tex. App.–Austin 1999, no pet.) (noting the causation standard under section 101.021(2) is proximate cause, not direct cause, immediate cause, or sole cause)); *see Bossley*, 968 S.W.2d at 343 ("Section 101.021(2) requires that for immunity to be waived, personal injury or death must be proximately caused by the condition or use of tangible property.").

The supreme court articulated the proximate cause requirement as it applies to drugs in *Miller*, 51 S.W.3d at 588. Miller, an inmate, was treated by the Texas Department of Criminal Justice's staff for nausea and severe headaches. *Id.* at 585. He received several medications before eventually being hospitalized and diagnosed with cryptococcal meningitis, which caused his death. *Id.* His widow sued the

---

in *Ruggeri* was not dispensed by the defendant or its employees. *Id.* at *1, 4.

7. The Texas Tort Claims Act does not define "use." Consequently, the supreme court has given the word its ordinary meaning.

TDCJ, alleging his death was caused by misuse of tangible property by improperly administering pain medications and fluids, which masked the symptoms of meningitis. *Id.*

The court held TDCJ used various drugs while treating Miller, but the fact that some property was involved was not enough. *Id.* at 588. The use of the property "must have actually caused the injury." *Id.* Although the medications given to Miller may have furnished the condition that made the injury possible by suppressing symptoms of meningitis, the court concluded that the treatment did not cause his death or worsen his condition—meningitis did. *Id.*

A similar case, which UTMDA relies on as a case on point, is *King*, 329 S.W.3d at 876. *King* involved allegations of negligence by UTMDA personnel surrounding a broken arm and torn rotator cuff the plaintiff suffered while being moved to another bed. *Id.* at 879. Prior to the hospital staff moving her, the plaintiff was given medication that put her to sleep. *Id.* at 881. Plaintiff alleged UTMDA's medical staff was negligent in misusing the medication that unnecessarily rendered her unconscious and thereby left her defenseless when she was moved to a different bed and subsequently injured. *Id.* Relying on *Miller*, this Court held UTMDA did not waive its immunity from suit because the "alleged use or misuse of medication *merely furnished the condition*—King's state or sleep or unconsciousness—that made the injury possible." *Id.* at 882 (emphasis added). In both cases, the plaintiff suffered personal injuries after receiving medication. The medication, however, was not the proximate cause of their injuries; it simply furnished the condition that made the injury possible.

Unlike in *Miller* and *King*, Jones's allegations and evidence show a nexus be-tween UTMDA's prescribing and dispensing Chantix and the injuries the drug allegedly caused Jones. Jones attached and incorporated into her petition two expert reports from medical doctors. Dr. B.R. Respess (an emergency physician) discussed causation in his report, explaining that Chantix contains a warning that taking it can worsen depression and that Jones previously had an adverse reaction to the drug. He concluded that "in all reasonable probability [Jones's] suicide attempt was due to the fact that she was prescribed [Chantix] as part of the 'Two to Quit' study at M.D. Anderson." Dr. George Glass (a psychiatrist) went into further detail regarding the side effects of Chantix and Jones's history in his report and concluded: "It was, in all medical probability, because [Jones] was involved in the study and then given Chantix, a psychotrophic [sic] drug with a black box warning, that she made an almost fatal suicide attempt." UTMDA introduced no contrary evidence. Viewing the pleadings and evidence in the light most favorable to Jones, including the testimony from Drs. Respess and Glass that her suicide attempt was likely caused by Chantix, we hold they support a reasonable inference that the drug prescribed and dispensed to Jones proximately caused her injuries. *See, e.g., Wise Reg'l Health Sys.*, 268 S.W.3d at 810.

In conclusion, Jones's pleadings and undisputed evidence trigger a waiver of UTMDA's governmental immunity under section 101.021(2) as a matter of law. Jones has alleged that UTMDA used tangible personal property by prescribing and dispensing the medication to her, and her allegations and evidence show a nexus between UTMDA's use of property and her injuries. Accordingly, the trial court

did not err in denying UTMDA's plea to the jurisdiction.

## CONCLUSION

We overrule UTMDA's sole issue on appeal, affirm the trial court's order denying UTMDA's plea to the jurisdiction, and remand this case to the trial court for further proceedings consistent with this opinion.