

# NUMBER 13-20-00001-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

**ELDA ALANIZ,** **Appellant,**

**v.**

**CHRISTUS SPOHN HEALTH SYSTEM
CORPORATION D/B/A CHRISTUS SPOHN
HOSPITAL CORPUS CHRISTI – SHORELINE,** **Appellee.**

### On appeal from County Court at Law No. 1
### of Nueces County, Texas.

## MEMORANDUM OPINION

**Before Justices Benavides, Hinojosa, and Silva
Memorandum Opinion by Justice Benavides**

Appellant Elda Alaniz filed a medical malpractice claim against appellee Christus Spohn Health System Corporation d/b/a Christus Spohn Hospital Corpus Christi – Shoreline (Shoreline). The trial court granted Shoreline's plea to the jurisdiction based on its assertion of governmental immunity and its contention that Alaniz's claim did not fall

within the "use of tangible personal property" waiver of immunity found in the Texas Tort Claims Act (TTCA). *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(2). We affirm.

## I. BACKGROUND

Alaniz was admitted to Shoreline on July 14, 2015, complaining of symptoms consistent with Raynaud's phenomenon.[1] A rheumatologist, Dr. Adriana Pop-Moody, ordered an upper extremity angiogram as a diagnostic procedure. Minutes after undergoing the angiogram, Alaniz suffered a stroke.

According to Alaniz's expert report,[2] angiography is an invasive procedure associated with approximately a 0.5% chance of stroke; therefore, it should only be performed when necessary. According to one of her experts, Alaniz presented with classic symptoms of Raynaud's phenomenon, and as such, the diagnostic approach, according to the New England Journal of Medicine, is to order "specific blood work," not conduct the inherently risky angiogram performed on Alaniz. In short, the expert opined that Dr. Pop-Moody breached the standard of care by administering an unnecessary angiogram that caused Alaniz's stroke.

The expert also opined that the standard of care was breached a second time when medical personnel failed to administer tPA, a clot dissolving agent, to Alaniz within

---

[1] Raynaud's phenomenon "causes some areas of your body—such as your fingers and toes—to feel numb and cold in response to cold temperatures or stress." MAYO CLINIC, *Raynaud's Disease, Symptoms & Causes*, https://www.mayoclinic.org/diseases-conditions/raynauds-disease/symptoms-causes/syc-20363571 (last visited June 21, 2021).

[2] We previously reviewed the sufficiency of Alaniz's expert report as it pertained to Shoreline. *Christus Spohn Health Sys. Corp. v. Alaniz*, No. 13-17-00590-CV, 2018 WL 3673013 (Tex. App.—Corpus Christi—Edinburg Aug. 2, 2018, no pet.) (mem. op.) (finding the report deficient under § 74.351 of the Texas Civil Practice & Remedies Code but remanding to the trial court to consider whether Alaniz should be granted a thirty-day extension to amend).

2

a four and one-half hour therapeutic window. According to the expert, tPA is the "appropriate treatment for an acute stroke," it can "reverse all or part of the symptoms of a stroke," and "[t]he earlier tPA is given, the higher the likelihood for complete recovery."

The treating physicians initially believed that administering tPA was inadvisable because Alaniz suffered an arterial puncture during the angiogram. Alaniz's condition worsened, and three hours later, the treating physicians consulted with a specialist. The specialist explained that their concerns were misplaced and recommended that tPA be administered promptly. By the time the decision to administer tPA was made, only fifteen minutes remained in the therapeutic window. According to her expert, Alaniz's medical records contain conflicting explanations for why Alaniz did not ultimately receive tPA within the therapeutic window. The specialist was told that the tPA had not been mixed in advance, and therefore, it would be impossible to administer timely. Another note in Alaniz's medical records indicated that the tPA had been prepared but sent back to the pharmacy prematurely. Whatever the reason, Alaniz claims she suffered a "major, disabling stroke" in the hospital, but the only medical treatment provided to her was aspirin.

According to Alaniz's petition, her treating physicians were negligent in several regards, including ordering the angiogram and failing to timely administer tPA. But she does not allege that any of the physicians were Shoreline employees. As to Shoreline, she alleges only that "hospital staff" were negligent for "[f]ailing to timely mix and administer the tPA."

Shoreline filed a plea to the jurisdiction arguing that Alaniz's claim does not fall

3

within the TTCA's waiver of governmental immunity because it involves a failure to use tangible personal property. The trial court granted the plea and severed Alaniz's claim against Shoreline. This appeal followed.

## II. STANDARD OF REVIEW & APPLICABLE LAW

Subject matter jurisdiction is essential to a court's authority to decide a case. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000) (citing *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993)). Whether a trial court has subject matter jurisdiction is a question of law we review de novo. *State Dep't of Highways & Pub. Transp. v. Gonzalez*, 82 S.W.3d 322, 327 (Tex. 2002). A plaintiff must plead facts that affirmatively demonstrate the trial court's subject matter jurisdiction. *Fleming v. Patterson*, 310 S.W.3d 65, 68 (Tex. App.—Corpus Christi–Edinburg 2010, pet. struck) (citing *Tex. Air Control Bd.*, 852 S.W.2d at 446).

A plea to the jurisdiction is a procedural vehicle used to challenge the trial court's jurisdiction. *Blue*, 34 S.W.3d at 554. When a plea challenges the sufficiency of the pleadings, we construe the pleadings liberally, taking all factual assertions as true, and look to the plaintiff's intent. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). Whether a pleader has alleged facts that affirmatively demonstrate a trial court's subject matter jurisdiction is a question of law. *Id.* If the pleadings are deficient but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and the plaintiff should be afforded the opportunity to amend. *Id.* at 226–27 (citing *County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002)). On the other hand, if the pleadings affirmatively negate the existence of jurisdiction, then the plea

4

may be granted without allowing an opportunity to amend. *Id.* at 227 (citing *Brown*, 80 S.W.3d at 555).

Governmental immunity from suit protects the political subdivisions of the State from lawsuits for money damages and deprives a trial court of subject matter jurisdiction over the plaintiff's claims. *Reata Const. Corp. v. City of Dallas*, 197 S.W.3d 371, 374 (Tex. 2006) (citing *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 n.3 (Tex. 2003)). The TTCA provides a limited waiver of governmental immunity for certain negligent conduct by government employees, including personal injury caused by a condition or use of tangible personal property.[3] TEX. CIV. PRAC. & REM. CODE ANN. §§ 101.021(2), .025. "Use" means "to put or bring into action or service; to employ for or apply to a given purpose." *Tex. Dep't of Crim. Justice v. Miller*, 51 S.W.3d 583, 588 (Tex. 2001). A claim involving the failure to use, or the non-use of property, does not fall within this limited waiver. *Id.* at 587; *Kerrville State Hosp. v. Clark*, 923 S.W.2d 582, 584 (Tex. 1996) (distinguishing between use and non-use of property).

For the waiver to apply, a use of property must proximately cause the plaintiff's injury. *City of Dallas v. Sanchez*, 494 S.W.3d 722, 726 (Tex. 2016) (per curiam) (citing *Dall. Cty. Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d 339, 342–43 (Tex. 1998)). Proximate cause has two requirements: cause in fact and foreseeability. *Id.* (citing *Ryder Integrated Logistics, Inc. v. Fayette County*, 453 S.W.3d 922, 929 (Tex. 2015) (per

---

[3] It is undisputed that Shoreline is a "governmental unit" for purposes of the TTCA. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.001(3)(B); *see also Christus Spohn Health Sys. Corp. v. Gracia*, No. 13-18-00485-CV, 2019 WL 4008554, at *1 (Tex. App.—Corpus Christi–Edinburg Aug. 26, 2019, pet. dism'd by agr.) (mem. op.) (finding the hospital system was entitled to governmental immunity because it operated Shoreline as a hospital district management contractor under § 285.072 of the Texas Health & Safety Code).

curiam)). To satisfy the cause in fact element, the use of property must be a substantial factor in causing the injury; that is, the use of property "must actually have caused the injury." *Id.* (quoting *Dallas County v. Posey*, 290 S.W.3d 869, 872 (Tex. 2009) (per curiam)). When using property merely furnishes a circumstance that makes the injury possible, the use is not a substantial factor in causing the injury. *Id.* (citing *Bossley*, 968 S.W.2d at 343).

### III.    ANALYSIS

### A.    Ordering the Angiogram

On appeal, Alaniz characterizes her malpractice claims against Shoreline as twofold: (1) the decision to administer the angiogram that caused the stroke; and (2) the treatment, or lack thereof, Alaniz received after the stroke. Shoreline correctly points out that Alaniz's pleading contains a single claim of negligence against Shoreline for failing "to timely mix and administer the tPA." Nevertheless, we will consider this suggested claim in deciding whether Alaniz should be granted an opportunity to amend. *See Miranda*, 133 S.W.3d at 226–27 (citing *Brown*, 80 S.W.3d at 555).

Where a "claim is premised on the hospital's use of property that was improper under the circumstances and caused harm, this is sufficient to establish negligent 'use' under the [TTCA], regardless of the manner in which the property was administered." *Univ. of Tex. M.D. Anderson Cancer Ctr. v. McKenzie*, 578 S.W.3d 506, 509 (Tex. 2019). Here, like *McKenzie*, Alaniz does not complain about the manner in which the angiogram was administered; rather, she alleges that it was improper to administer the angiogram under the circumstances. *See id.* Further, it is undisputed that the angiogram caused

6

Alaniz's stroke. *See id.* Thus, we conclude that the decision to order the angiogram could constitute a claim for negligent use of tangible personal property under the TTCA with one caveat—for Shoreline's immunity to be waived, the decision must have been made by a Shoreline employee acting in the course and scope of their employment. *See DeWitt v. Harris County,* 904 S.W.2d 650, 654 (Tex. 1995). This is where Alaniz's suggested claim falls short.

Alaniz alleges in her petition that Dr. Pop-Moody ordered the angiogram. The TTCA defines "employee" as "a person, including an officer or agent, who is in the paid service of a governmental unit by competent authority, but does not include an independent contractor . . . or a person who performs tasks the details of which the governmental unit does not have the legal right to control." TEX. CIV. PRAC. & REM. CODE ANN. § 101.001(2). Although physicians exercise independent medical judgment, that fact alone does not preclude them from being an "employee" under the TTCA. *Murk v. Scheele*, 120 S.W.3d 865, 867 (Tex. 2003) (per curiam). Instead, the inquiry turns on whether the physician is in the "paid service" of the hospital and the hospital otherwise exercises control over the physician's practice. *Id.* (quoting TEX. CIV. PRAC. & REM. CODE ANN. § 101.001(2)). Usually physicians deemed to be an "employee" of a governmental unit are medical faculty at a public teaching hospital. *See, e.g.*, *Franka v. Velasquez*, 332 S.W.3d 367, 369–70 (Tex. 2011); *Murk*, 120 S.W.3d at 867.

Here, Alaniz has never alleged or suggested on appeal that Dr. Pop-Moody is in the paid service of Shoreline or that Shoreline exercises control over the doctor's practice. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.001(2); *Murk*, 120 S.W.3d at 867. To the

7

contrary, in her petition, Alaniz distinguished her claims against Dr. Pop-Moody from her single claim against "hospital staff." Shoreline has never claimed that Dr. Pop-Moody is an employee. *See, e.g.*, TEX. CIV. PRAC. & REM. CODE § 101.106(e) ("If a suit is filed under this chapter against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit."). In short, there is no indication that Dr. Pop-Moody was anything other than an independent contractor. *See Baptist Mem'l Hosp. Sys. v. Sampson*, 969 S.W.2d 945, 948 (Tex. 1998) ("A hospital is ordinarily not liable for the negligence of a physician who is an independent contractor."); TEX. CIV. PRAC. & REM. CODE ANN. § 101.001(2) (excluding independent contractors from the definition of "employee"). Because Alaniz's suggested claim does not fall within the TTCA's limited waiver, we decline her implicit invitation to remand the case for an opportunity to replead. *See Tex. A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 840 (Tex. 2007) (declining request to replead where plaintiff's "pleading defects cannot be cured, and he has made no suggestion as to how to cure the jurisdictional defect"). We overrule Alaniz's first sub-issue.

## B.    Failure to Timely Mix and Administer tPA

Alaniz's claim that hospital staff were negligent in failing to timely mix and administer tPA is a complaint about the non-use of tangible personal property that falls outside of the TTCA's limited waiver of immunity. *See Miller*, 51 S.W.3d at 587; *Clark*, 923 S.W.2d at 584; *Dallas County v. Alejo*, 243 S.W.3d 21, 28 (Tex. App—Dallas 2008, no pet.) (failing to give a patient a more effective medication than the one administered

8

constitutes non-use of property). Alaniz argues on appeal that Shoreline "dispensed"[4] the tPA, and this constituted a use of tangible personal property that waived Shoreline's immunity. Alaniz points to cases finding waiver where a hospital's pharmacy negligently dispensed a medication, and the plaintiff suffered an injury as a result of taking the improper medication. *See, e.g.*, *Univ. of Tex. M.D. Anderson Cancer Ctr. v. Jones*, 485 S.W.3d 145, 151–52 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) (holding that immunity was waived for a claim that the hospital negligently prescribed and dispensed a drug that should not have been provided to the patient due to her history with depression); *see also Wise Reg'l Health Sys. v. Brittain*, 268 S.W.3d 799, 805–07 (Tex. App.—Fort Worth 2008, no pet.) (holding that immunity was waived for a patient's claim that nurses administered medication when they should not have done so).

While we agree that dispensing medication can constitute a use of tangible personal property under the TTCA, in this case, there is no causal link between Shoreline dispensing tPA and Alaniz's injury. *See Sanchez*, 494 S.W.3d at 726. The TTCA's waiver only applies if the use of property actually caused the plaintiff's injury. *Id.* Here, Alaniz does not allege that Shoreline was negligent in dispensing tPA. To the contrary—unlike the cases she relies on—Alaniz alleges that tPA was the proper medication under the circumstances. *See Jones*, 485 S.W.3d at 151; *Brittain*, 268 S.W.3d at 805. Instead, as Alaniz acknowledges in her brief, Shoreline's "subsequent failure to timely mix and

---

[4] We assume that when Alaniz claims Shoreline "dispensed" the tPA, she is referring to the conflicting note in her medical records indicating that the hospital pharmacy prepared the tPA but that it was returned to the pharmacy prematurely. As discussed below, it is undisputed that Shoreline never administered the tPA to Alaniz. Therefore, as Alaniz uses the term, a hospital pharmacy "dispensing" a medication is not synonymous with a patient taking or receiving the medication.

9

administer the tPA" was the negligent conduct that proximately caused her injury. Consequently, the true nature of Alaniz's claim is a "mere non-use" of property that is insufficient to waive Shoreline's immunity. *See McKenzie*, 578 S.W.3d at 513 (quoting *Clark*, 923 S.W.2d at 584); TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(2). Additionally, because this defect cannot be cured, remanding for an opportunity to replead this claim would be improper. *See Miranda*, 133 S.W.3d at 227. We overrule Alaniz's second sub-issue.

## IV. CONCLUSION

We affirm the trial court's judgment.

GINA M. BENAVIDES
Justice

Delivered and filed on the
15th day of July, 2021.

10