

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-24-00001-CV

**BEXAR COUNTY HOSPITAL DISTRICT** d/b/a University Health f/k/a University Health
System,
Appellant

v.

Brandon **ROBERTS**,
Appellee

From the 150th Judicial District Court, Bexar County, Texas
Trial Court No. 2021CI00455
Honorable Nadine Melissa Nieto, Judge Presiding

Opinion by:     Luz Elena D. Chapa, Justice

Sitting:        Luz Elena D. Chapa, Justice
                Liza A. Rodriguez, Justice
                Lori I. Valenzuela, Justice

Delivered and Filed: November 6, 2024

AFFIRMED

In this interlocutory appeal, appellant Bexar County Hospital District challenges the trial

court's December 8, 2023 order granting reconsideration, vacating the previous order granting its

plea to the jurisdiction, and denying the plea to the jurisdiction. We affirm.

BACKGROUND

Dr. Sarah Abang-Hayes prescribed the medication Trazodone to Appellee Brandon Roberts, resulting in prolonged priapism that required multiple surgeries and ultimately developing permanent erectile dysfunction. On January 8, 2021, Roberts filed suit against Bexar County Hospital District, Medical Center Pavilion Pharmacy, Accord Healthcare Inc., and Dr. Abang-Hayes.[1] Accord filed a Rule 91a motion to dismiss the case against it; the trial court granted the motion on August 25, 2021. In March 2022, Roberts filed his third amended petition, adding as a defendant Community Medicine Associates (CMA)—the doctor's employer along with BCHD. Roberts nonsuited Dr. Abang-Hayes on January 24, 2023.

On May 11, 2023, BCHD filed a plea to the jurisdiction. The trial court held a hearing on May 22, 2023; Roberts did not attend the hearing or file a timely response. Later that day, Roberts filed "Plaintiff's Response to Defendant's Plea to the Jurisdiction and Motion for Reconsideration/Extension of Time." On July 10, 2023, the trial court granted BCHD's plea to the jurisdiction.[2]

The trial court then heard Roberts's motion on July 26, 2023 and September 26, 2023.[3] By that time, Roberts had also filed a fourth amended petition. On December 8, 2023, the trial court granted Roberts's motion for reconsideration, vacated its July 10, 2023 order granting BCHD's plea to the jurisdiction, and denied the plea to the jurisdiction. This appeal followed.

---

[1] Bexar County Hospital District (BCHD) identifies itself as "Bexar County Hospital District d/b/a University Health f/k/a as University Health System." It explained in a motion to dismiss Roberts incorrectly identified it as Medical Center Pavilion Pharmacy and University Hospital and further explained it owns and operates both entities. It is undisputed BCHD owns and operates both entities, and for ease of reference, we refer to these entities collectively as BCHD.

[2] Roberts's claims against CMA remained pending.

[3] On August 8, 2023, Roberts also filed a motion for new trial incorporating, by reference, the contentions he made in the motion for reconsideration. On September 22, 2023, Roberts also filed an identical pleading to the May 22, 2023 filing.

## PLEA TO THE JURISDICTION

BCHD argues the trial court erred by granting the motion for reconsideration, vacating the order dismissing Roberts's claims, and denying its plea to the jurisdiction.

### A.  Standard of Review

We review a trial court's ruling on a motion for reconsideration for an abuse of discretion. *See, e.g.*, *Foussadier v. Triple B Servs., LLP*, No. 01-18-00106-CV, 2019 WL 2127604, at *3 (Tex. App.—Houston [1st Dist.] May 16, 2019, pet. denied) (mem. op.). "A trial court abuses its discretion when it acts without reference to any guiding rules or principles." *Id.*

"Because governmental immunity is jurisdictional, it is properly raised through a plea to the jurisdiction, which we review de novo." *City of San Antonio v. Maspero*, 640 S.W.3d 523, 528 (Tex. 2022). ("Governmental units are immune from suit unless immunity is waived by state law."). "[T]o prevail on a claim of immunity, the governmental defendant may challenge whether the plaintiff has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the case, the existence of those very jurisdictional facts, or both." *City of San Antonio v. Riojas*, 640 S.W.3d 534, 536 n.8 (Tex. 2022) (quoting *Tex. Dep't of Transp. v. Lara*, 625 S.W.3d 46, 52 (Tex. 2021)) (internal quotation marks omitted). "When the pleadings are challenged, we review whether the alleged facts, if true, affirmatively demonstrate jurisdiction; because we construe pleadings liberally in favor of the pleader, we will grant a plea to the jurisdiction without an opportunity to replead only if the pleadings affirmatively negate jurisdiction." *Jones v. Turner*, 646 S.W.3d 319, 325 (Tex. 2022). "In determining whether a plaintiff has stated a claim[,] . . . we look to the true nature of the dispute—a plaintiff may not expand the [Texas Tort Claims] Act's limited waiver through artful pleading." *Univ. of Texas M.D. Anderson Cancer Ctr. v. McKenzie*, 578 S.W.3d 506, 513 (Tex. 2019).

When a plea challenges the existence of jurisdictional facts, we "must move beyond the pleadings and consider evidence." *Riojas*, 640 S.W.3d at 536 n.8 (quoting *Lara*, 625 S.W.3d at 52) (internal quotation marks omitted). "The analysis then mirrors that of a traditional summary judgment." *Riojas*, 640 S.W.3d at 536 n.8 (quoting *Lara*, 625 S.W.3d at 52) (internal quotation marks omitted). The defendant therefore has the burden to demonstrate there is no genuine issue as to any material fact, and it is entitled to judgment as a matter of law. *See Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 221, 227–28 (Tex. 2004); *see also* TEX. R. CIV. P. 166a(c). If the defendant carries this burden, the plaintiff must then demonstrate the existence of a disputed material fact on the jurisdictional issue. *See, e.g.*, *Texas Health & Hum. Servs. Comm'n v. Pope*, 674 S.W.3d 273, 281 (Tex. 2023). If "the pleadings and evidence generate a 'fact question on jurisdiction,' dismissal on a plea to the jurisdiction is improper." *Maspero*, 640 S.W.3d at 529 (quoting *Univ. of Tex. at Austin v. Hayes*, 327 S.W.3d 113, 116 (Tex. 2010)). "'[I]n determining whether a material fact issue exists, we must take as true all evidence favorable to the plaintiff, indulging every reasonable inference and resolving any doubts in the plaintiff's favor.'" *Pope*, 674 S.W.3d at 281 (alteration in original) (quoting *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 771 (Tex. 2018)). "In doing so, 'we cannot disregard evidence necessary to show context, and we cannot disregard evidence and inferences unfavorable to the plaintiff if reasonable jurors could not.'" *Id.* (quoting *Alamo Heights*, 544 S.W.3d at 771).

## B. Texas Tort Claims Act

Section 101.021 of the Texas Tort Claims Act provides: "[a] governmental unit in the state is liable for: . . . personal injury and death so caused by a condition or use of tangible personal . . . property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." TEX. CIV. PRAC. & REM. CODE § 101.021(2). The Texas

Supreme Court has explained subsection (2) immunity waiver "requires negligence or a wrongful act or omission of an officer or employee acting within the scope of his employment, where the negligent conduct involve[s] some condition or some use of tangible personal property under circumstances where there would be private liability." *McKenzie*, 578 S.W.3d at 513 (alteration in original) (quoting *Salcedo v. El Paso Hosp. Dist.*, 659 S.W.2d 30, 33 (Tex. 1983)) (internal quotation marks omitted).

"For immunity to be waived under section 101.021(2), the injury must [] be 'so caused' by the use of tangible personal property that the governmental unit would, 'were it a private person, be liable to the claimant according to Texas law.'" *Univ. of Texas M.D. Anderson Cancer Ctr. v. Jones*, 485 S.W.3d 145, 151 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) (quoting section 101.021(2)). "The requirement of causation is more than mere involvement"; "a nexus between the use of tangible property and the plaintiff's injuries is required." *Id.* In other words, a plaintiff must allege and prove the use proximately caused his personal injury. *See id.*

Turning to the condition or use requirement, the Texas Supreme Court "ha[s] defined 'condition' as 'either an intentional or an inadvertent state of being.'" *Sampson v. Univ. of Texas at Austin*, 500 S.W.3d 380, 388 (Tex. 2016) (quoting *Abutahoun v. Dow Chem. Co.*, 463 S.W.3d 42, 49 (Tex. 2015)). "To state a 'condition' claim under the Tort Claims Act, there must be an allegation of 'defective or inadequate property.'" *Id.* (quoting *Salcedo*, 659 S.W.2d at 32). "Furthermore, [the Texas Supreme Court] ha[s] defined 'use' to mean 'to put or bring into action or service; to employ for or apply to a given purpose.'" *Id.* (quoting *Tex. Dep't of Crim. Justice v. Miller*, 51 S.W.3d 583, 588 (Tex. 2001)); *see also Texas Dep't of Crim. Just. v. Rangel*, 595 S.W.3d 198, 207 (Tex. 2020) ("[O]ur interpretation of 'use' is consistent with the ordinary meaning of the word."). However, "the plain meaning of 'use' does not necessarily require

physical manipulation of an object." *Rangel*, 595 S.W.3d at 207. "As with negligent activity claims under common law, to state a 'use' of tangible personal property claim under the Tort Claims Act, the injury must be *contemporaneous* with the use of the tangible personal property—'[u]sing that property must have actually caused the injury.'" *Sampson*, 500 S.W.3d at 388–89 (alteration in original) (quoting *Miller*, 51 S.W.3d at 588). Moreover, the Texas Supreme Court has explained "a governmental unit does not use tangible personal property . . . within the meaning of section 101.021(2) by merely providing, furnishing, or allowing . . . access to it," *id.* at 389 (alterations in original) (quoting *Rusk State Hosp. v. Black*, 392 S.W.3d 88, 98 (Tex. 2012)) (internal quotation marks omitted), or by making the property available to the government official without instructing or ordering them to use it. *See Rangel*, 595 S.W.3d at 207–08. However, "[w]here . . . a governmental unit authorizes or orders an employee to use tangible personal property for a specific purpose, that governmental unit has 'used' the tangible personal property for purposes of the Act's waiver." *Id.* at 206.

## C. The Record

Roberts's Third Amended Petition alleged, among other things, the doctor prescribed Trazodone to him, failed to disclose the side effects of Trazodone, failed to provide him with informed consent, allowed Roberts to fill the prescription without counseling at BCHD, and was medically negligent. Roberts's medical negligence claim specifically alleged BCHD (1) failed to assess the competence of medical staff to prescribe medication and disclose serious and permanent side effects; (2) failed to oversee the quality of treatment rendered by medical staff members to Roberts; (3) failed to develop, employ, and/or enforce policies and procedures for the disclosure of serious and permanent side effects to prescribed medication; (4) knowingly, willfully and

wantonly concealed the serious and permanent side effects of Trazodone from Roberts; and (5) failed to promulgate a system to provide informed consent to patients.

BCHD's May 2023 plea to the jurisdiction challenged Roberts's jurisdictional allegations in the Third Amended Petition along with the existence of jurisdictional facts. BCHD contended the true nature of the claim involved the treating doctor's exercising of medical judgment in prescribing Trazodone and her alleged failure to inform Roberts of its side effects—neither of which arose out of or involved a condition or use of tangible personal property. It further contended its evidence—the deposition testimony by plaintiff's expert, Dr. Lige B. Rushing Jr.—proved the alleged acts or omissions involved the use of information, not tangible personal property. On July 10, 2023, the trial court granted the plea to the jurisdiction.

After the May 2023 hearing, but before issuing the July 10 order, Roberts filed the Fourth Amended Petition, reiterating his allegations but emphasizing his allegations the doctor prescribed the medication and BCHD dispensed it.[4] On September 22, 2023, Roberts filed a pleading referred to as "Plaintiff's Response to Defendant's Plea to the Jurisdiction and Motion for Reconsideration/Extension of Time." In the response and motion, Roberts contended he properly pled the prescribing and dispensing of medication constituted a use of tangible personal property under the Act. Roberts also argued he presented evidence supporting these allegations, including expert reports opining that failing to advise of the secondary effects, coupled with the negligent prescribing and dispensing of the medication caused his injuries.

---

[4] Although we must consider the jurisdictional evidence, we cannot conclude, as BCHD argues, the true nature of the dispute does not involve the use of tangible personal property because the dispute's focus is negligent hiring, negligent supervision, failure to develop policies, failure to provide informed consent, and intentionally withholding information. We must view Roberts's live petition in its entirety, *see Jones*, 485 S.W.3d at 149, and although Roberts never uses the phrase "prescribing and dispensing" medication in the third amended petition, he plainly alleges the prescribing of Trazodone and BCHD's dispensing of it caused his injuries. *See id.*

Roberts also argued he had good cause for failing to file a response to the motion and attend the hearing.

### D. Analysis

The trial court heard argument on Roberts's motion on July 26 and September 26, 2023. During the hearings, BCHD argued the Third Amended Petition alleged the true nature of Roberts's claim, pleading an emphasis in the use of medical judgment and its intangible nature—in contrast to the Fourth Amended Petition's allegations about the prescribing and dispensing of medication. BCHD also emphasized Roberts, not BCHD or his treating doctor, administered the medication. As evidence, it attached transcript excerpts of Dr. Rushing's October 2021 deposition and the expert report of Roberts's expert Dr. Michael Coburn.

During his deposition, Dr. Rushing testified he believed the standard of care required of the doctor treating Roberts was to inform him of the potential side effect of priapism while taking Trazodone, and he saw no proof showing the doctor informed Roberts of the potential side effect. Dr. Rushing further testified this breached the standard of care and caused Roberts to suffer damages. During cross-examination, Dr. Rushing agreed the treating doctor did not actually administer the medication. But he also testified he believed the treating doctor wrote the prescription for Roberts, Roberts filled the prescription at the pharmacy, and then Roberts took the medication as prescribed. Dr. Rushing agreed the decision to prescribe and the failure to give certain information about side effects, along with the exercise of medical judgment did not involve the use of tangible property. He further testified the treating doctor should have used her medical judgment to prescribe a different medication.

In his expert report, Dr. Coburn explained Roberts was prescribed Trazodone for insomnia, but his medical records did not show he was cautioned about the potential risk of Trazodone

causing priapism. He further opined the standard of care required the treating doctor inform Roberts about that risk and the need to seek urgent medical care if the side effect endured more than four hours. Dr. Coburn also opined the delay in treatment for Roberts's prolonged priapism proximately caused Roberts to require certain medical interventions, as well as developing permanent erectile dysfunction.

Roberts largely reiterated his arguments in his response to the plea and motion for reconsideration. He specifically focused on the allegations and evidence supporting the prescribing and dispensing of Trazodone. Roberts opposed the plea supported by the following evidence: (1) an FDA list of drugs used for treating insomnia, (2) Dr. Rushing's expert report, and (3) a copy of the Fourth Amended Petition.[5]

Dr. Rushing's expert report explained the doctor's care and treatment fell below the accepted standards of care because the doctor (1) "[f]ailed to inform Mr. Roberts of the potential adverse affect [sic] of priapism secondary to taking trazodone" and (2) "[p]rescribed a more hazardous/risky medication for insomnia when there were multiple alternative medications available without the potential side effect of priapism." The report further provided Roberts's treating doctor "should have ordered a less risky medication for Mr. Roberts'[s] insomnia."

On December 8, 2023, the trial court granted Roberts's motion for reconsideration, vacated its July 10 order dismissing Roberts's petition against BCHD on plea to the jurisdiction grounds, and denied BCHD's plea to the jurisdiction.

BCHD argues on appeal the evidence fails to show there was any use of tangible personal property by BCHD, and even if there was, Roberts self-administered his Trazodone medication, and BCHD merely furnished it. However, the Tort Claims Act "does not narrow the definition of

---

[5] The list of drugs did not include Trazodone.

use to encompass only the manner of administration, nor does it limit the scope of the waiver to 'use' that is not preceded by medical judgment." *McKenzie*, 578 S.W.3d at 513–14 (quoting *San Antonio State Hosp. v. Cowan*, 128 S.W.3d 244, 246 (Tex. 2004)). "While [the Texas Supreme Court] ha[s] never addressed the issue directly, [it] ha[s] indicated that the use of medication that is improper under the circumstances and causes harm constitutes negligent 'use' under the Tort Claims Act." *Id.* at 514 (quoting *Kerrville State Hosp. v. Clark*, 923 S.W.2d 582, 584 (Tex. 1996)) (providing plaintiffs "allege and have presented evidence that the Hospital used property [a sugar water solution carrier agent for a medication] that should not have been used *and* that the [solution] is what harmed [the plaintiff]," and this "is sufficient to waive immunity"); *see, e.g.*, *Jones*, 485 S.W.3d at 150 ("This Court has previously held that the dispensing of a drug by UTMDA's pharmacy was a use of tangible personal property for purposes of the section 101.021(2) waiver.") (cited with approval in *McKenzie*).[6]

Specifically, "prescribing and dispensing" a drug to a claimant and directing him to use it for medical purposes "put[s] the drug into service and employ[s] it for a given purpose as those concepts are commonly understood," and therefore constitutes "sufficient 'use of tangible personal property' to satisfy that requirement of the section 101.021(2) waiver." *Jones*, 485 S.W.3d at 151; *see, e.g.*, *id.* at 150 ("dispensing or administering a drug is a use of tangible personal property for purposes of section 101.021(2)," and further citing cases and quoting *Texas Tech Univ. Health Science Ctr. v. Buford*, 334 S.W.3d 334, 338 (Tex. App.–Eastland 2010, no pet.) for proposition that "common thread running through those cases [finding a waiver] is that, in each one, the

---

[6] *See also McKenzie*, 578 S.W.3d at 514 (providing any "suggestion that 'use' of property transforms into medical judgment so long as the property is administered correctly simply is not supported either by the statute's plain language or, as discussed below, by our precedent."); *Id.* ("In other words, the McKenzies complain about the Hospital's use of property under circumstances where it (1) should not have been used at all and (2) caused harm. This is as much a claim for negligent use of property as a claim that the D5W was improperly administered would have been. That the subsequent administration followed protocol does not somehow negate any negligence in using the property in the first place.").

governmental unit being sued was the entity that employed those who used, by administering or dispensing, the drugs that were alleged to have caused the damages" (alteration in original)).

Turning to the evidence, we must determine whether BCHD carried its burden of demonstrating there is no genuine issue as to any material fact, and if so, whether it is entitled to judgment as a matter of law. *See Miranda*, 133 S.W.3d 217, 227–28; *see also* TEX. R. CIV. P. 166a(c). In evaluating the parties' evidence, we must take as true all evidence favorable to Roberts, we must indulge every reasonable inference and resolve any doubts in Roberts's favor, we must not disregard evidence necessary to show context, and we must not disregard evidence and inferences unfavorable to Roberts if reasonable jurors could not. *See Pope*, 674 S.W.3d at 281; *Maspero*, 640 S.W.3d at 529.

Here, Dr. Rushing testified the treating doctor's exercise of medical judgment to prescribe Trazodone, and the failure to give certain information about its side effects did not involve the use of tangible property. And Dr. Coburn testified the treating doctor fell below the accepted standard of care by failing to inform Roberts about the risks of Trazodone. However, Dr. Rushing and Dr. Coburn also explained, in pertinent part: (1) BCHD, through the treating doctor, prescribed Trazodone to Roberts, (2) BCHD's pharmacy filled Roberts's prescription, (3) Roberts took Trazodone as prescribed, and (4) Roberts's taking of Trazodone and delays in seeking urgent medical care proximately caused Roberts's priapism to result in permanent erectile dysfunction. *Cf. Jones*, 485 S.W.3d at 151 (holding "Jones alleged and offered expert evidence [including two expert reports from her medical doctors] that her suicide attempt was 'proximately caused by the use of tangible personal property, namely the [Chantix] that was prescribed and dispensed' by UTMDA" (second alteration in original)). Because prescribing and dispensing medication causing Roberts personal injury constitutes a use of tangible personal property that satisfies the

requirements of section 101.021(2) waiver, we cannot conclude that BCHD carried its burden of demonstrating there was no genuine issue of material fact, or that it was entitled to judgment as a matter of law. *See McKenzie*, 578 S.W.3d at 514 ("By contrast, here the McKenzies allege and have presented evidence that the Hospital used property (the D5W) that should not have been used *and* that the D5W is what harmed Courtney. Under our reasoning in [*Kerrville State Hospital v. Clark*], this is sufficient to waive immunity.").

Even if BCHD had carried its burden, Roberts showed a disputed material fact exists regarding the jurisdictional issue. *See Pope*, 674 S.W.3d at 281. Dr. Rushing's expert report explained the treating doctor's care and treatment fell below the accepted standard of care because the doctor prescribed Trazodone—a more hazardous/risky medication for insomnia—when there were multiple alternatives without the potential side effect of priapism. The report further provided the treating doctor failed to inform Roberts of the potential side effect of priapism, and Trazodone ultimately caused Roberts prolonged priapism requiring surgery. Such evidence is sufficient to raise a fact question as to whether the prescribing of Trazodone and it causing prolonged priapism resulting in surgery sufficiently constituted a use of tangible personal property satisfying the requirements of a section 101.021(2) waiver. *See Maspero*, 640 S.W.3d at 529.

Viewing the pleadings and evidence in the light most favorable to Roberts, including the testimony and expert reports of Dr. Rushing and Dr. Coburn, BCHD failed to carry its burden to conclusively establish that there is no genuine issue as to any material fact or that it was entitled to judgment as a matter of law. *See Maspero*, 640 S.W.3d at 529; *Riojas*, 640 S.W.3d at 536 n.8.

Accordingly, we cannot conclude the trial court abused its discretion by granting Roberts's motion

for reconsideration. *See Foussadier*, 2019 WL 2127604, at *3.[7]


Luz Elena D. Chapa, Justice

---

[7] We need not consider BCHD's argument regarding whether the trial court erred by concluding Roberts showed good cause for his absence at the initial hearing. *See* TEX. R. APP. P. 47.1. Roberts argued good cause in support of his motion for extension of time—a motion he made in the alternative to the motion for reconsideration. The trial court's December 8, 2023 order did not specifically grant the extension and provided "[a]ll other relief not specifically granted herein is denied." The trial court therefore denied the extension of time. *Accord* TEX. CIV. PRAC. & REM. CODE § 51.014 (identifying certain appealable interlocutory orders and not including motions for extensions of time); *Texas A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 840 (Tex. 2007) ("Appellate courts have jurisdiction to consider immediate appeals of interlocutory orders only if a statute explicitly provides such jurisdiction."); *Morrison v. Profanchik*, 578 S.W.3d 676, 681 n.2 (Tex. App.—Austin 2019, no pet.) (concluding no jurisdiction to consider trial court's decision to grant extension of time to file motion to dismiss because no statute explicitly providing review of interlocutory order granting extension of time).